UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,

Plaintiff,

v.

AIR & LIQUID SYSTEMS CORPORATION, et al.,

Defendants.

CASE NO. 3:18-cv-05536-RJB

ORDER DENYING DEFENDANT O'REILLY AUTOMOTIVE STORES, INC.'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant O'Reilly Automotive Stores, Inc.'s ("O'Reilly" and "Schuck's"; also referred to as "CSK" in the filings)[1] Motion for Summary Judgment (Dkt. 151). The Court has considered the motion and the remainder of the

---

[1] O'Reilly noted that it is known as "O'Reilly Auto *Enterprises, LLC*, formerly known as CSK Auto, Inc., and incorrectly sued as O'Reilly *Automotive Stores, Inc.* ('CSK')." Dkt. 151, at 1 (emphasis added). However, O'Reilly titled the motion "Defendant O'Reilly Automotive Stores, Inc.'s Motion for Summary Judgment" (Dkt. 151), which is the name the Court uses to reference the motion.

ORDER DENYING DEFENDANT O'REILLY AUTOMOTIVE STORES, INC.'S MOTION FOR SUMMARY JUDGMENT - 1

file herein. For the reasons set forth below, the Court should deny O'Reilly's Motion for Summary Judgment (Dkt. 151).

## I. BACKGROUND

On October 27, 2017, Plaintiff filed a complaint in this matter in state court, alleging that Mr. Rudie Klopman-Baerselman's ("Decedent") exposure to asbestos from asbestos-containing products manufactured, sold, or distributed by the Defendants substantially contributed to his mesothelioma and that Defendants are liable. Dkt. 1. On July 3, 2019, the case was removed to this Court. Dkt. 1. The complaint was amended once in state court and twice in this Court. Dkts. 68-1, at 688, 743; 72; 88; 90; 107; 154; 166; 167; and 168. The operative complaint is in Dkt. 168.

The complaint provides that Decedent passed away from mesothelioma on November 25, 2017. Dkt. 168, at 5. Decedent was an employee of Royal Dutch Lloyd and Rotterdam Lloyd and worked as a merchant mariner assigned to several vessels. Dkt. 168, at 6. Decedent was exposed to asbestos and asbestos-containing products while aboard the vessels. Dkt. 168, at 6. Decedent performed all maintenance and friction work on his vehicles from 1966–1997 (with vehicle models ranging from 1950–2016 (Dkt. 151-1, at 4–5)), which exposed him to asbestos and asbestos-containing materials. Dkt. 168, at 6.

Plaintiff alleges that Decedent was "exposed to [O'Reilly's] asbestos-containing brakes, clutches, and gaskets through his own automotive work [and] as a professional auto mechanic." Dkt. 151-1, at 3. Mr. Steven Klopman-Baerselman's ("Steven"), Decedent's son, provided deposition testimony that Decedent bought sheet gasket material for his automotive work from "NAPA or Schucks [*sic*] or any other auto parts store." Dkt. 164-2, at 55. Schuck's was an

automotive parts retailer throughout Washington, Idaho, Oregon, and Montana. Dkt. 164-3, at 10. It was acquired by O'Reilly in 1987. Dkt. 164-3, at 10.

Steven stated that he saw Decedent work on brake systems as early as 1977 and that he watched Decedent work on the brakes of his 1969 Vista Cruiser. Dkt. 163, at 2. Steven also stated that he saw Decedent work on clutches and gaskets and that Decedent bought parts from Schuck's, including Bendix brakes and Fel-Pro gaskets. Dkt. 163, at 4. Mr. James Murray, a Schuck's representative, provided deposition testimony that Schuck's carried Bendix premium brakes "in maybe mid [19]80s." Dkt. 164-3, at 11. Plaintiff provided deposition testimony that Schuck's sold to Decedent Bendix brakes and Fel-Pro gaskets. Dkt. 151-2, at 3.

Steven stated that approximately 20% of the brakes Decedent worked on came from Schuck's. Dkt. 163, at 4. Steven stated that he believes Decedent started shopping at Schuck's in the 1980s and that he mainly recalled Decedent shopping at a nearby Mill Plain location. Dkt. 164-2, at 5. Steven stated that he thought it was possible that Decedent shopped at more than one Schuck's location. Dkt. 164-2, at 63.

Plaintiff alleges that O'Reilly is liable in products liability, including strict product liability, for exposing Decedent to asbestos-containing components and equipment. Dkt. 167, at 10. Plaintiff alleges that O'Reilly "engaged in the business of selling, manufacturing, producing, designing, and otherwise putting into the stream of commerce asbestos-containing products [that] were a proximate and producing cause of the injuries of Decedent." Dkt. 167, at 10–11.

Plaintiff alleges that O'Reilly knew that these asbestos-containing components would be used without inspection and falsely represented that they would safely do the job for which they were intended. Dkt. 167, at 11. Plaintiff alleges that O'Reilly failed to place adequate warnings on asbestos-containing products and take reasonable precautions or exercise reasonable care in

1 | its plan for the use of asbestos-containing products. Dkt. 167, at 12. Plaintiff alleges that

2 | Decedent was unaware of the hazards and defects in O'Reilly's asbestos-containing products and

3 | that Decedent was never warned about the hazards of asbestos. Dkts. 167, at 11; and 151-1, at 3.

4 | O'Reilly filed the instant motion for summary judgment (Dkt. 151) arguing that, as a

5 | mere product seller, it is immune from liability under RCW 7.72.040. Dkt. 151. Plaintiff

6 | responded in opposition to O'Reilly's motion for summary judgment. Dkt. 163. O'Reilly

7 | responded in support of its motion for summary judgment. Dkt. 165.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, discovery and disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); s*ee also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**B. PRODUCT SELLER LIABILITY**

O'Reilly's argument for summary judgment is as follows:

> [P]laintiff's only claim regarding [O'Reilly] is that decedent obtained automotive parts from a Schuck's store in Camas, Washington. Since there was no Schuck's store in Camas until December 1999, all of decedent's alleged exposure to products from [O'Reilly] occurred after 1981. O'Reilly, as a mere retail seller, is immune from liability under RCW 7.72.040.

Dkt. 151, at 5.

1. Product Seller Liability Standards

> [A] product seller other than a manufacturer is liable to the claimant only if the claimant's harm was proximately caused by:
>
> (a) The negligence of such product seller; or
> (b) Breach of an express warranty made by such product seller; or
> (c) The intentional misrepresentation of facts about the product by such product seller or the intentional concealment of information about the product by such product seller.

RCW 7.72.040(1).

> "Product seller" means any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product. The term also includes a party who is in the business of leasing or bailing such products.

RCW 7.72.010(1).

The Tort Reform Act, including RCW 7.72.040 "appl[ies] to all claims arising on or after July 26, 1981". RCW 4.22.920; *see also* Dkt. 151, at 4.

2. Product Seller Liability Analysis

O'Reilly's theory of product seller immunity is flawed in two respects.

*1. 1980 Predates July 26, 1981*

Plaintiff alleges that Decedent purchased asbestos-containing products from Schuck's stores before 1981. This is supported by the deposition testimony of Steven, who stated that he believes Decedent started shopping at Schuck's in the 1980s, at its Mill Plain store. Dkt. 164-2, at 5 (stating that Decedent shopped there "in the '80s. I'd say early to mid '80s …. [R]ight here on Mill Plain"). This statement, viewed in a light most favorable to the nonmoving party, suggests that decedent may have shopped at Schuck's as early as 1980, which clearly predates July 26, 1981.

In its reply, O'Reilly argues that Plaintiff should be precluded from offering evidence concerning Schuck's stores other than the Camas store. Dkt. 165, at 2–4. This argument is without merit.

In its interrogatories and requests for production, O'Reilly requested the locations of O'Reilly stores from which Plaintiff contends decedent obtained asbestos-containing products. Dkts. 151-2, at 3; and 165, at 3. Plaintiff answered, "[Decedent] regularly purchased asbestos-

containing brakes, clutches, and gaskets from Shuck's [*sic*] Auto Parts in or around Camas, Washington." Dkt. 151-2, at 3.

Plaintiff contends that Decedent also patronized the Mill Plain Schuck's in Vancouver, Washington, as supported by Steven's deposition testimony. Dkts. 163, at 4; and 164-2, at 5. O'Reilly argues that this "goes beyond the information plaintiff provided in response to … interrogatories[; therefore,] the Court should decline to consider the evidence." Dkt. 165, at 3.

O'Reilly, quoting the *Stark* court, provides: "'The purpose of interrogatories to an adverse party is to enable the opposing party to prepare for *trial*, to narrow the issues in order to determine what evidence will be needed at the *trial*, and to reduce the possibility of surprise at the *trial*.'" Dkt. 165, at 3 (quoting *Stark v. Allis-Chalmers & Northwest Roads, Inc.*, 2 Wn.App. 399, 404 (1970) (emphasis added)). "'To allow the plaintiff to plead at *trial* a theory … not mentioned in the answers to the extensive *pretrial inquiries* of the defendant could be an injustice to the defendant.'" *Id.* (emphasis added).

O'Reilly's reliance on *Stark* is misplaced because this case is not at trial and answers regarding the Schuck's store locations and dates were mentioned in answers to pretrial inquiries. The Court should consider this evidence suggesting that Decedent may have purchased asbestos-containing automotive parts from Schuck's as early as 1980.

   2. *Plaintiff Alleges that O'Reilly was Negligent*

Washington reserves product liability for negligent product sellers. RCW 7.72.040(1)(a).

Plaintiff alleges that O'Reilly was negligent. Dkt. 163, at 12. Plaintiff alleges that Schuck's knew or should have known that its products were hazardous and warranted adequate and timely warning for use; Schuck's customers relied on its expertise; a reasonable retailer would have warned its customers of the hazards of a product like Bendix brakes; and that

Schuck's failed to warn or instruct Decedent of the hazards of asbestos-containing products that it sold to him. Dkt. 163, at 12–18. Plaintiff asserts that Decedent was injured and Schuck's automotive parts caused his injuries. Dkt. 163, at 18.

With the facts viewed in a light most favorable to the nonmoving party, it appears that O'Reilly may not be immune from liability as a product seller.

### C. CONCLUSION

Plaintiff has offered specific facts supported by deposition that contradict facts offered by O'Reilly. There exists a genuine dispute over material facts requiring a jury to resolve differing versions of the truth. O'Reilly has failed to meet its burden for summary judgment. Therefore, the Court should deny O'Reilly's motion for summary judgment (Dkt. 151).

### III. ORDER

Therefore, it is **HEREBY ORDERED** that Defendant O'Reilly Automotive Stores, Inc.'s Motion for Summary Judgment (Dkt. 151) is **DENIED.**

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 13th day of March, 2019.

ROBERT J. BRYAN
United States District Judge