The Honorable Robert J. Bryan

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   ERIC KLOPMAN-BAERSELMAN, as
Personal Representative for the Estate of
RUDIE KLOPMAN-BAERSELMAN,
deceased,

11

12                        Plaintiff,

13            v.

14   AIR & LIQUID SYSTEMS
CORPORATION, et al.,

15

16                        Defendants.

17

Civil Action No. 3:18-cv-5536-RJB

PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT
NATIONAL AUTOMOTIVE PARTS
ASSOCIATION'S MOTION TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION

NOTED ON MOTION CALENDAR:
MAY 24, 2019
(ORAL ARGUMENT REQUESTED)

18        Plaintiff Eric Klopman-Baerselman, as Personal Representative for the Estate of Rudie

19   Klopman-Baerselman, opposes Defendant National Automotive Parts Association's motion to

20

21   dismiss for lack of personal jurisdiction (Doc. 213), and would show the Court that the motion

22   should be denied.

23                                      **INTRODUCTION**

24        Decedent Rudie Klopman-Baerselman was diagnosed with mesothelioma following years

25   of exposure to asbestos products, including from performing repair and maintenance on his and

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 1

his family's vehicles as a "shadetree" mechanic.[1] He was exposed to asbestos brakes, clutches, and gaskets supplied by National Automotive Parts Association (NAPA). His family is pursuing claims against NAPA and a number of other defendants for Rudie's injuries and death as a result of Rudie's exposure to their asbestos products.

NAPA's motion to dismiss should be denied. First, it is an improper personal jurisdiction motion, as NAPA seeks a ruling from the Court that it is not a product manufacturer or seller. This is akin to a motion for summary judgment. NAPA seeks dismissal on the basis of its claim that it is only a "membership organization" and does not sell or distribute products. This is contradicted by the evidence that all Genuine Parts Company (GPC) parts flow through NAPA Distribution Centers to individual NAPA-branded stores. In 2017, a Washington jury rejected NAPA's claim that it is simply a trade association, finding that NAPA was a distributor of Rayloc brakes. **Ex. 1** to Declaration of Benjamin H. Adams ("Adams Dec."), Verdict, *Coogan v. Borg-Warner Morse TEC*, April 17, 2017, Wash. Super. Ct.

GPC corporate representatives admitted in the *Coogan* trial that NAPA is in the chain of distribution because they run NAPA Distribution Centers for GPC parts. Following the *Coogan* verdict, GPC and NAPA have attempted to craft a new corporative narrative that denies NAPA owns or runs NAPA Distribution Centers. They have offered testimony from a different corporate representative in this case, Gaylord Spencer, who denies that NAPA owns the Distribution Centers, although he admits the centers have the NAPA logo on the outside of the building and carry NAPA-branded parts that are sent to individually owned NAPA-branded stores.

---

[1] Plaintiff refers to the decedent as "Rudie" to avoid confusion with his son, Plaintiff Eric Klopman-Baerselman. No disrespect is intended.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 2

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

Last year, the U.S. District Court for the Eastern District of Arkansas rejected NAPA's contention that it is not a supplier or distributor, finding that there are genuine issues of material fact regarding NAPA's operation of NAPA Distribution Centers and role in marketing Rayloc brakes. **Ex. 2** to Adams Decl., *Thomas v. Borg Warner Morse TEC LLC, et al.*, No. 4:17-CV-00522 BSM (E.D. Ark. Nov. 19, 2018).

This Court may exercise specific personal jurisdiction against NAPA because Plaintiff's claims arise specifically from NAPA's contacts with Washington. NAPA supplied asbestos-containing brakes, clutches, and gaskets in Washington, Rudie purchased and used those products in Washington, and that Rudie's exposure to asbestos from those products caused him to develop mesothelioma in Washington.

## STATEMENT OF FACTS

I. **The Complaint alleges exposure to NAPA asbestos products sold in Washington.**

Plaintiff's Third Amended Complaint alleges that Rudie developed mesothelioma as a result of his exposure to asbestos-containing products used during his service in the Dutch merchant marines and from his automotive maintenance and repair work. (Doc. 167 at 6).[2] Plaintiff alleges that NAPA was "engaged in the mining, processing, manufacturing, sale, and distribution of asbestos or asbestos-containing components and equipment requiring or calling for the use of asbestos and asbestos-containing products." (Doc. 167 at 9). While in Washington, Rudie "was exposed, on numerous occasions, to asbestos-containing components and equipment requiring or calling for the use of asbestos or asbestos-containing products produced and sold by Defendants

---

[2] This case was originally filed in the Superior Court of Washington, Pierce County, on October 27, 2017. It was removed to this Court on July 3, 2018. (Doc. 1).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 3

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1    and, in so doing, inhaled great quantities of asbestos fibers." *Id.*

2         The Complaint alleges that NAPA "transacted business in this state by mining,

3    manufacturing, selling, producing, distributing, or otherwise purposefully placing into the stream

4    of commerce asbestos-containing products or products used in conjunction with asbestos, products

5    they purposefully directed into the state of Washington, and into Pierce County . . . ." (Doc. 167

6    at 4). As a result of NAPA's sales of asbestos products, Rudie was exposed to asbestos and

7    developed mesothelioma. (Doc. 167 at 5, 10-11).

8
**II.    Fact witnesses have confirmed that Rudie purchased automotive parts at NAPA
9        stores in Washington.**

10        Although Rudie died from mesothelioma before he could give a deposition, other fact

11   witnesses have testified about his work with asbestos-containing brakes, clutches, and gaskets

12   purchased from NAPA. Rudie's son, Steven Klopman-Baerselman, testified that his and his

13   father's "standard procedure" for buying brakes, clutches, and gaskets was to purchase parts from

14   NAPA or a few other stores. **Ex. 3** to Adams Dec., Dep. of Steven Klopman-Baerselman, 12/12/18,

15   at 76:16-19, 91:18-92:15, 112:11-16. Prior to 1992, Steven observed his father perform 40 to 60

16   brake jobs, and estimated that Rudie used brakes purchased from NAPA on 60% of those brake

17   jobs. **Ex. 4** to Adams Decl., Steven Klopman-Baerselman Dep., 12/13/18, at 210:8-15.

18
         Rudie's friend and co-worker, Ray Smith, with whom he did a lot of automotive work,
19
     similarly testified that he and Rudie "spent a lot time in the Napa store." **Ex. 5** to Adams Decl.,
20
     Ray Smith Dep., 12/20/18, at 47:13-19. There were two NAPA stores that they went to – one in
21
     Washougal and one in Camas. *Id.* at 47:20-48:17. The NAPA store in Washougal was their go-to
22
     store; Smith explained that it "became our first store we looked at before we went somewhere else"
23
     because "they always seemed to have the parts that were hard to find." *Id.* at 48:6-17.
24

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 4

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

Both Steven Klopman-Baerselman and Smith recalled that one of the brands of brakes that Rudie purchased from NAPA was Rayloc. Steven Klopman-Baerselman Dep., 12/13/18, at 69:5-11, 201:16-23, 208:20-23, 210:2-15; **Ex. 6** to Adams Decl., Ray Smith Dep., 2/28/19, at 123:23-124:7, 125:18-25. Smith explained that Rayloc is "Napa's brand." Ray Smith Dep., 12/20/18, at 130:2-3.

**III.     Rayloc brakes contained asbestos.**

Rayloc brakes were manufactured by GPC and sold at NAPA stores. **Ex. 7** to Adams Decl., GPC Discovery Responses, at 6-7. GPC's corporate representative, Paul LeCour, has testified that from the 1930s until 1985, all Rayloc branded brake shoes and pads for passenger cars and light trucks would have contained asbestos, with one exception: semimetallic brake pads for disc brakes. **Ex. 8** to Adams Decl., LeCour Dep., at 23:6-20.

**IV.     Rayloc brakes were marketed and distributed by NAPA.**

One of GPC's corporate representatives, Byron Frantz, has testified that "NAPA . . . . [i]s an association of warehouse distributors that market and brand under the NAPA name, and Genuine Parts Company is a member of NAPA." **Ex. 9** to Adams Decl., Frantz Depo., 3/4/15, at 16:1-7, 23:3-6. GPC has represented that Rayloc parts "were sold to and distributed by NAPA Distribution Centers." GPC Discovery Responses, at 6-7. NAPA Distribution Centers in turn sell products to NAPA auto parts stores. *Id.* at 7. GPC *only* sold Rayloc products through NAPA Distribution Centers from the 1960s to the 1990s. **Ex. 10** to Adams Decl., Frantz Dep., 3/29/16, at 274:12-18.

NAPA owned the Rayloc trademark and licensed it to GPC. Frantz Dep., 3/29/16, at 273:19-23, 274:23-275:3. In some years, Rayloc brakes were even marketed under the NAPA

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NAPA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION – 5

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 · FACSIMILE (206) 237-8650

name. *Id.*; **Ex. 11** to Adams Decl., NAPA Rayloc Master Catalog, 1991.

Testifying in a trial in Washington last year, Liane Brewer, another GPC corporate representative, testified that NAPA store owners purchased "NAPA auto parts." **Ex. 12** to Adams Decl., *Coogan*, Trial Tr. 2/23/17 PM, at 46:9-14.[3] She identified the NAPA Distribution Center in Washington as the main supplier for the NAPA stores at issue in that case. *Id.* at 73:9-14. She agreed that NAPA was part of the chain of distribution:

Q. . . . You work for the Genuine Parts Company in the distribution center?

A. In Spokane, yes.

Q. Their headquarters are in Atlanta?

A. Yes, ma'am.

Q. They sent products from NAPA distribution centers which are located throughout the country, and one of them is in Spokane?

A. Yes, there is 58, I believe, across the country.

Q. And then part of that chain of distribution is they send parts to different NAPA stores throughout whatever region they are in?

A. Yes, ma'am.

*Id.* at 47: 1-14. While Brewer was explaining this relationship, she and the jury were viewing a KeyNote slide that visualizes this relationship between GPC, NAPA Distribution Centers, and individual NAPA-branded stores:

---

[3] Ms. Brewer was called as an adverse witness by the plaintiff in the *Coogan* case. She was called to testify at trial because GPC/NAPA were sent a Rule 30(b)6) deposition notice in discovery and produced Ms. Brewer as their corporate representative who could speak on behalf of the company with regard to certain topics, including the relationship between distribution centers and NAPA-branded retail stores. **Ex. 13** to Adams Decl., Fifth Amended Notice of Videotaped Deposition of the Defendant Genuine Parts Company d/b/a NAPA; **Ex. 14** to Adams Decl., Brewer Dep., 11/16/16, at 15:17-16:1. At her deposition, she testified that she was speaking on behalf of GPC. When she was called as an adverse witness at trial, she again stated multiple times that she was a representative of GPC. *Id.* at 25:24-26:3, 62:7-12.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 6

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

1
2
3
4
5
6
7
8
9
10
11
12
13
14

**Chain of distribution**







Documents attached to Brewer's deposition in the *Coogan* case make it quite clear that the distribution centers were, in fact, called NAPA Distribution Centers. **Ex. 15** to Adams Decl. These documents are contracts and letters between the NAPA Distribution Center in Spokane, and the owner of the NAPA auto parts store in Spokane, Jay Coogan.

Additionally, Jay Coogan testified that the inventory sold at his NAPA store came from the NAPA Distribution Center in Spokane. **Ex. 16** to Adams Decl., *Coogan*, Trial Tr. 2/08/17 PM at 33:10-34:17, 79:25-80:4. Likewise, the corporate representative for a gasket manufacturer, Dana, testified that its asbestos-containing gaskets were sold to and shipped to NAPA Distribution Centers. **Ex. 17** to Adams Decl., *Coogan*, Trial Tr. 2/28/17 PM at 19:4-12.

In the *Thomas* case in the Eastern District of Arkansas, NAPA offered the testimony of its

15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 7

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

corporate representative, Gaylord Spencer. **Ex. 18** to Adams Decl., Spencer Dep., 8/2/18, at 7:19-8:5. While Spencer claimed that NAPA has no distribution centers, *id.* at 18:1-7, he had to admit that NAPA's website states that "NAPA currently  maintains sixty Distribution Centers around the United States." *Id.* at 19:3-20:10; **Ex. 19** to Adams Decl., NAPA Website page. And while Spencer claimed that NAPA only employs 13 people, Spencer Dep. at 18:10-12, its website stated that NAPA has 17,000 employees. **Ex. 19**. Spencer accounted for this by explaining that "[t]he website is using a broader connation of those people that work in a NAPA outlet that says NAPA on the – on the facility name." Spencer Dep., at 19:16-20:7. He testified that "a lot of people within Genuine Parts Company think of themselves as NAPA people. It's the brand." *Id.* at 23:22-24.

While Spencer insisted that GPC owns the distribution center in Little Rock, he admitted that the distribution center had the NAPA name on it. *Id.* at 25:25-26:15. The signage on the outside of the Little Rock distribution center carried the yellow and blue octagonal NAPA logo. *Id.* at 27:2-9.

Only NAPA-branded stores have access to NAPA parts from NAPA Distribution Centers. *Id.* at 32:19-33:13. The NAPA Distribution Centers are not retail locations, but distribute parts to NAPA stores. *Id.* at 43:18-44:3. Spencer explained that "a Distribution Center would purchase parts from a number of different vendors, consolidate them, keep them under one roof. And then, yes, a store could then buy the parts they have in that Distribution Center from one single source." *Id.* at 44:13-18. Spencer acknowledged that "[i]t would be fair to say that from the point of manufacture to the point [of] distribution to the point of end use that that Distribution Center would be in that overall chain of how a product gets moved." *Id.* at 46:12-17.

NAPA sells products branded with the NAPA name. *Id.* at 54:18-55:2. NAPA provides

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 8

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

"point of purchase sales signage" in NAPA stores, *i.e.*, the NAPA name is on the outside of the store and on products and promotional materials inside the stores. *Id.* at 61:19-22.

NAPA provides marketing and advertising services to GPC. *Id.* at 28:12-19, 53:22-54:4 NAPA markets NAPA auto parts in all kinds of media, including radio, print, and television. *Id.* at 36:14-19. NAPA's revenue comes from NAPA-branded stores, GPC, and suppliers to GPC, which all pay NAPA for its marketing activities. *Id.* at 37:8-38:10. GPC pays dues of $500,000 per year to NAPA. *Id.* at 66:5-16, 67:18-23. NAPA stores pay a percentage of their yearly revenues to NAPA. *Id.* at 67:24-68:10. And parts suppliers pay NAPA, through GPC, for NAPA advertising. *Id.* at 37:8-38:10, 68:11-20.

The point of all NAPA's marketing activities is that they "want people –whether it's consumers or whether it's technicians – to think of NAPA when they need an automotive part." *Id.* at 37:4-7. NAPA markets and advertises its products with the goal of encouraging people to buy NAPA-branded products. *Id.* at 55:3-24.

Spencer agreed that marketing a product is part of the process of selling the product:

Q.   That would be part of the method by which products are sold, fair, is the marketing component of selling those products?

[Objection]

A.   Well, marketing—you know I'm a marketing guy. So marketing always feel like they have a role in selling product[s].

Q.   Sure.

A.   . . . . [W]hat we try to do form a NAPA advertising standpoint is raise a level of awareness so that people recognize the NAPA name and think about us in a positive way. And so when their car has a need, they think of NAPA.

*Id.* at 56:1-17.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 9

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

NAPA benefits from the NAPA-branded products sold in NAPA stores because, as Spencer explained, "[i]f [the store] sells a lot of stuff we would receive some benefit because the more that is sold, potentially, the greater the ad allowance would be." *Id.* at 65:20-22. Moving more auto parts through the supply chain benefits NAPA financially. *Id.* at 68:16-69:1.

## ARGUMENTS AND AUTHORITIES

### I.     Standard of Review

Plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction is appropriate. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Where the motion is based on written materials rather than an evidentiary hearing, "'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). The Court looks to the plaintiff's pleadings and affidavits to determine if there has been a prima facie showing of personal jurisdiction. *Id.* Although the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted), the court must resolve conflicts between the facts contained in the parties' affidavits in Plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### II.    Standard for exercising specific personal jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Where no federal statute governs personal jurisdiction, the court's jurisdictional analysis starts with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai*

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 10

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

*Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.2002). Washington's long-arm statute (RCW § 4.28.185) extends personal jurisdiction to the broadest reach that the Due Process Clause of the federal Constitution permits. *Aweida Arts, Inc. v. Pure Glass Distribution, Inc.,* 157 F. Supp. 3d 929, 934 (W.D. Wash. 2015) (citing *Shute v. Carnival Cruise Lines,* 113 Wash.2d 763, 783 P.2d 78, 82 (1989)).

Jurisdiction may properly be exercised under the Due Process Clause when a defendant has "minimum contacts" with the forum state. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 108-09 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Specific jurisdiction may be exercised when the defendant purposefully directs his activities at residents of the forum and the litigation results from alleged injuries that "'arise out of or relate to'" those activities. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The requirement that a defendant purposely direct conduct at the forum state ensures that the defendant's connection with the forum state is sufficient to cause the defendant to "reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297.

The determination of whether jurisdiction is appropriate depends on the facts and circumstances of each case. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (holding that the specific jurisdiction inquiry necessitates a study of the interconnection between the defendant, the forum, and the litigation); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985). The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction comports with due process: "'(1) The defendant must have done some act by which he

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 11

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 · FACSIMILE (206) 237-8650

purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking

the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-

related activities; and (3) the exercise of jurisdiction must be reasonable.'" *Gray & Co. v.*

*Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Shute v. Carnival Cruise Lines*,

897 F.2d 377, 381 (9th Cir. 1990)).

The plaintiff bears the burden as to the first two parts of the test. *Mavrix Photo, Inc. v.*

*Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff meets that burden, the

burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is

unreasonable. *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

The "purposeful availment" requirement ensures that "a defendant will not be haled

into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*,

471 U.S. at 475 (internal quotation marks omitted). Rather, the connection to the forum

"must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*,

134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (internal quotation marks omitted).

The U.S. Supreme Court has consistently recognized that specific personal jurisdiction may

be exercised over a defendant that sells products in the forum state that cause injury in the forum

state. This issue came up relatively recently in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). There,

Nevada residents brought suit in Nevada against a Georgia law enforcement officer who had

allegedly unlawfully searched them in a Georgia airport. *Id.* at 1124. The Court found that specific

jurisdiction was lacking in Nevada because all relevant events had occurred in Georgia. *Id.* None

of the defendant's conduct occurred in the forum state of Nevada. In holding that jurisdiction could

not be exercised in such circumstances, the Court explained that the proper inquiry for specific

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 12

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

jurisdiction is "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. Jurisdiction may be established over defendants who reach into the forum state, and "physical entry into the State—either by the defendant in person or through an agent, *goods,* mail, or some other means—is certainly a relevant contact." *Id.* at 1122 (emphasis added). *Walden* thus recognized that the sale of goods in the forum state is a "relevant contact" for establishing specific jurisdiction. *Id.*

   *Walden* is consistent with other U.S. Supreme Court cases holding that a defendant's product sales and distribution in the forum state creates personal jurisdiction over the defendant for torts arising from those activities. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984). Jurisdiction is particularly proper over a defendant that "continuously and deliberately exploited" a state's market. *Id.* at 781. In *Keeton*, this Court upheld New Hampshire's assertion of specific jurisdiction over an Ohio corporation, Hustler Magazine, for a libel suit brought by a New York resident. *Id.* at 772. Hustler was headquartered in California and its contacts with New Hampshire consisted of some 10 to 15,000 copies of Hustler magazine distributed in-state each month. *Id.* The Supreme Court readily upheld personal jurisdiction based on these contacts, as they evidenced a deliberate exploitation of the New Hampshire market such that Hustler could reasonably foresee being haled into New Hampshire court. *Id.* at 781. It was stressed that New Hampshire had an interest in resolving disputes involving torts committed within its state, such as Hustler's distribution of libelous products to New Hampshire residents. *Id.* at 776-77. In *Bristol-Myers Squibb*, the Court distinguished *Keeton* as a case in which specific jurisdiction was principally based "on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State." 137 S.Ct. at 1782.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 13

**WEINSTEIN COUTURE PLLC**
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON  98101
(206) 508-7070  -  FACSIMILE (206) 237-8650

1    This standard for personal jurisdiction was reiterated by a plurality of the Court in *J.*

2  *McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011). There, a plaintiff brought a personal

3  injury suit in New Jersey against the British manufacturer of a metal shearing machine that had a

4  U.S. distributor. *Id.* at 878 (plurality opinion). Justice Kennedy, writing for a plurality, noted that

5  one of the ways a nonresident defendant may purposefully avail itself of the privilege of conducting

6  business in the forum, and thereby manifest its intention to submit to the authority of the forum's

7  courts, is "by sending its goods rather than its agents." *Id.* at 882. To support jurisdiction, the

8  defendant must target the forum for the sale or distribution of its goods. *Id.* A case-specific analysis

9  is required to determine "whether a defendant has followed a course of conduct directed at the

10  society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has

11  the power to subject the defendant to judgment concerning that conduct." *Id.* at 884.

12

13  **III.    Specific personal jurisdiction may properly be exercised over NAPA in this case.**

14    Under Supreme Court precedent, this Court may properly exercise specific jurisdiction

15  over NAPA. Plaintiff has brought forth evidence showing that NAPA marketed Rayloc brakes and

16  distributed Rayloc brakes and other automotive parts through its distribution centers in

17  Washington. The conflict between Plaintiff's evidence and Spencer's affidavit testimony must be

18  resolved in Plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

19    Here, Plaintiffs' claims arise out of NAPA's purposeful efforts to directly serve the market

20  for asbestos-containing products in this State. NAPA's distribution and supply of asbestos-

21  containing products in Washington provides sufficient basis for this Court to exercise personal

22  jurisdiction over NAPA. Such continuing sales in Washington certainly satisfy the long-arm

23  statute, as well as due process. NAPA's product sales in Washington are sufficient to establish

24

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 14

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 – FACSIMILE (206) 237-8650

purposeful availment of the benefits and protections of Washington law. NAPA should have realized that it would have liability for injury caused by exposures to the asbestos products it sold in this State. And Plaintiff's asbestos exposure claims arise directly from NAPA's product sales to Rudie in Washington. This Court should find that Plaintiff's allegations and evidence are sufficient to establish a sufficient factual basis for the exercise of personal jurisdiction over NAPA.

Finally, the Court should reject NAPA's contention that the exercise of jurisdiction would be "unconstitutional." (Doc. 213 at 9). NAPA has failed to meet its burden to show that the exercise of jurisdiction is unreasonable. *Mavrix Photo*, 647 F.3d at 1228. Its only argument on this point is its contention that it did not manufacture, sell, or distribute any automotive products, a claim that has been thoroughly refuted by Plaintiff's evidence. There is nothing unfair or unreasonable about exercising jurisdiction over NAPA when it has run automotive parts distribution centers in Washington for decades.

## CONCLUSION

Because Plaintiff's allegations and evidence are sufficient to support the exercise of specific personal jurisdiction over NAPA, its motion should be denied.

DATED at Los Angeles, California this 20th day of May 2019.

DEAN OMAR BRANHAM SHIRLEY, LLP

*/s/ Benjamin H. Adams*
BENJAMIN H. ADAMS (*Pro hac vice*)
CA. BAR NO. 272909
302 N. Market Street, Suite 300
Dallas, Texas 75202
T: 214/722-5990
F: 214/722-5799
badams@dobllp.com

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 15

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650

and

WEINSTEIN COUTURE PLLC

*/s/ Alexandra B. Caggiano*
Brian D. Weinstein, WSBA # 24497
Benjamin R. Couture, WSBA # 39304
Alexandra B. Caggiano, WSBA # 47862
601 Union Street, Suite 2420
Seattle, Washington 98101
T: (206) 508-7070
F: (206) 237-8650

Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

*/s/ Chelsea Weeks*
Chelsea Weeks,
Paralegal

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT NAPA'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION – 16

WEINSTEIN COUTURE PLLC
601 UNION STREET, SUITE 2420
SEATTLE, WASHINGTON 98101
(206) 508-7070 - FACSIMILE (206) 237-8650