UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br>　　　　　　　　　　Defendants. | CASE NO. 3:18-cv-05536-RJB<br><br>ORDER DENYING DEFENDANT NATIONAL AUTOMOTIVE PARTS ASSOCIATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

THIS MATTER comes before the Court on Defendant National Automotive Parts Association's ("NAPA") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"). Dkt. 213. The Court has considered the pleadings filed in support of and in opposition to the Motion to Dismiss and the remainder of the record herein. Oral argument is unnecessary.

For the reasons set forth below, the Court should deny NAPA's Motion to Dismiss (Dkt. 213).

## I. BACKGROUND

On October 27, 2017, Plaintiff filed a complaint in this matter in state court, alleging that Mr. Rudie Klopman-Baerselman's ("Decedent") exposure to asbestos from asbestos-containing products manufactured, sold, or distributed by the Defendants substantially contributed to his mesothelioma, for which Defendants are liable. Dkt. 1. On July 3, 2019, the case was removed to this Court. Dkt. 1. The complaint was amended once in state court and twice in this Court. Dkts. 68-1, at 688, 743; 72; 88; 90; 107; 154; 166; 167; and 168. The operative complaint is in Dkt. 168.

The complaint provides that Decedent passed away from mesothelioma on November 25, 2017. Dkt. 168, at 5. Decedent was an employee of Royal Dutch Lloyd and Rotterdam Lloyd and worked as a merchant mariner assigned to several vessels. Dkt. 168, at 6. Decedent was exposed to asbestos and asbestos-containing products while aboard the vessels. Dkt. 168, at 6. Decedent performed all maintenance and friction work on his vehicles from 1966–1997 (with vehicle models ranging from 1950–2016 (Dkt. 151-1, at 4–5)), which exposed him to asbestos and asbestos-containing materials. Dkt. 168, at 6.

Plaintiff alleges that Decedent was exposed to asbestos-containing brakes, clutches, and gaskets supplied by NAPA. Dkt. 223. Plaintiff alleges that the "Court has jurisdiction over each and every named Defendant" because, "[b]y selling, supplying, distributing, and/or causing to be used asbestos or asbestos-containing products to which Decedent was exposed in Washington, Defendants purposefully availed themselves of the privilege of doing business in Washington, thus invoking the benefits and protections of Washington's laws." Dkt. 168, at 5.

NAPA argues, in its instant Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), that the Court lacks personal jurisdiction over NAPA in this case. Dkt. 213. NAPA argues that it

1 "lacks sufficient contacts with the State of Washington such that specific jurisdiction could attach." Dkt. 213, at 2. NAPA continues, "Plaintiff has not alleged that general personal jurisdiction exists over NAPA, nor could Plaintiff colorably do so. NAPA is a Georgia limited liability company with its principal place of business in Atlanta, Georgia." Dkt. 213, at 2 n.2.

Plaintiff filed a response in opposition to NAPA's Motion to Dismiss. Dkt. 223. Plaintiff argues that NAPA's Motion to dismiss "seeks a ruling from the Court that it is not a product manufacturer or seller. This is akin to a motion for summary judgment." Dkt. 223, at 2. Plaintiff continues, "NAPA seeks dismissal on the basis of its claim that it is only a 'membership organization' and does not sell or distribute products. This is contradicted by the evidence that all Genuine Parts Company (GPC) parts flow through NAPA Distribution Centers to individual NAPA-branded stores." Dkt. 223, at 2.

NAPA filed a reply in support of its Motion to Dismiss. Dkt. 229.

## II. DISCUSSION

Fed. R. Civ. P. 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced

admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*; *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002). In resolving a Fed. R. Civ. P. 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion. *See Daimler v. Bauman*, 571 U.S. 117, 123 (2014) (noting that plaintiffs opposing the motion to dismiss for lack of personal jurisdiction submitted declarations and exhibits purporting to demonstrate defendant's contacts in the forum state); *see also Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135–36 (S.D. Cal. 2016).

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.,* 95 Wn.App. 462, 465 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *See Schwarzenegger*, 374 F.3d at 800–01.

To exercise personal jurisdiction over a nonresident defendant under federal law, that defendant must have at least "minimum contacts" with the relevant forum state such that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger,* 374 F.3d at 801 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether a defendant had minimum contacts, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186 (1977).

Personal jurisdiction exists in two forms, general and specific. General jurisdiction is apparently not at issue here. Plaintiff has not argued for general jurisdiction, nor did Plaintiff respond to NAPA's argument against general jurisdiction. *See generally* Dkt. 213, at 2 n.2.

To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial,* 381 F.3d 948, 960–61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). "The plaintiff bears the burden of satisfying the first two prongs of the [specific jurisdiction] test …. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger,* 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The Court discusses the three elements of specific jurisdiction below.

**A. WHETHER NAPA PURPOSEFULLY AVAILED ITSELF OF THE PRIVILEGE OF CONDUCTING ACTIVITIES IN WASHINGTON, THEREBY INVOKING THE BENEFITS AND PROTECTIONS OF ITS LAWS**

Where a case sounds in tort, courts use the "purposeful direction" test to determine whether a defendant purposefully availed itself of forum benefits. *Axiom Foods, Inc. v. Acerchem Int'l*, 874 F.3d 1064, 1068–69 (9th Cir. 2017). To satisfy the purposeful direction test, a defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. at 1069.

NAPA argues that Plaintiff cannot satisfy the purposeful direction test because NAPA "never placed any automotive parts into the stream of commerce at any location, at any time, let alone in Washington." Dkt. 213, at 6. NAPA continues that it "does not own or operate a wholesale or retail business and does not design, manufacture, supply, distribute, or sell parts, or place any parts in the steam of commerce …. Neither does NAPA have any control over the sale of automotive parts sold or supplied by independent third parties." Dkt. 213, at 6 (citations omitted).

However, Plaintiff has offered substantial evidence to the contrary. Plaintiff has fact witnesses who have testified that Decedent purchased automotive parts at NAPA stores in Washington. Dkt. 223, at 4. Decedent's son, Steven Klopman-Baerselman ("Steven"), and Decedent's co-worker, Ray Smith ("Mr. Smith") testified that Decedent purchased Rayloc asbestos-containing brakes from NAPA. Dkt. 223, at 5. Mr. Smith testified that Rayloc is "Napa's [*sic*] brand." Dkt. 223, at 5.

Plaintiff also offered testimony from Byron Frantz ("Mr. Frantz"), a corporate representative of the Genuine Parts Company (referred to throughout the record as "GPC"). Dkt. 223, at 5. Mr. Frantz apparently testified that "NAPA … [i]s an association of warehouse distributors that market and brand under the NAPA name, and Genuine Parts Company is a member of NAPA." Dkt. 223, at 5. Mr. Frantz continued that NAPA owned the Rayloc trademark and licensed it to GPC, and that Rayloc brakes were marketed under the NAPA name. Dkt. 223, at 5–6.

Plaintiff also points to testimony from Liane Brewer, a GPC corporate representative, who testified that Distribution Centers, including a distribution center in Spokane, Washington, are part of the chain of distribution for NAPA auto parts. Dkt. 223, at 6.

Plaintiff also offered testimony from Gaylord Spencer ("Mr. Spencer"), a NAPA corporate representative, who provided testimony about the relationship between GPC and NAPA. Dkt. 223, at 8. Mr. Spencer stated NAPA employs thirteen people. Dkt. 223, at 8. When asked why the NAPA website stated that NAPA has 17,000 employees, Mr. Spencer stated, "[t]he website is using a broader connation of those people that work in a NAPA outlet that says NAPA on the – on the facility name …. [A] lot of people within Genuine Parts Company think of themselves as NAPA people. It's the brand." Dkt. 223, at 8.

Mr. Spencer also provided that, although the NAPA website provides that "NAPA currently maintains sixty Distribution Centers" and a NAPA logo hangs on the Distribution Centers, they are not "not really" "NAPA branded Distribution Centers." Dkt. 224-18, at 21. "NAPA is a membership company. They don't have any Distribution Centers. NAPA doesn't own any Distribution Centers." Dkt. 224-18, at 19.

Mr. Spencer also stated that NAPA provides marketing and advertising services to member companies. Dkt. 223, at 9. "NAPA branded product[s] … come from a wide variety of manufacturers." Dkt. 224-18, at 55. Mr. Spencer testified that one of NAPA's roles has been to encourage people to buy more NAPA branded products. Dkt. 224-18, at 56. Mr. Spencer apparently agreed that suppliers selling more product through the GPC affiliated distribution network would financially benefit NAPA. Dkt. 224-18, at 69.

NAPA argues that it "merely licenses the use of the 'NAPA' logo and trademark to its members and to certain authorized suppliers." Dkt. 213, at 3. However, Plaintiff has presented significant evidence to the contrary, including "evidence showing that NAPA marketed Rayloc brakes and distributed Rayloc brakes and other automotive parts through its distribution centers in Washington." Dkt. 223, at 14. To the extent the proffered facts are in conflict between

Plaintiff and NAPA, they must be resolved in Plaintiff's favor in this Fed. R. Civ. P. 12(b)(2) motion. *See Ballard,* 65 F.3d at 1498; *Rio Props., Inc,* 284 F.3d at 1019.

Although Plaintiff's response in opposition to NAPA's Motion to Dismiss does not specifically address the purposeful direction test, Plaintiff has presented evidence satisfying each of its three elements. *See* Dkt. 223. Plaintiff has made a showing that NAPA (1) distributed, supplied, marketed, and benefitted from the sale of asbestos-containing Rayloc brakes (2) that were expressly aimed at, marketed, sold, and distributed in Washington, and (3) caused harm that it knew was likely to be suffered in Washington.

Therefore, Plaintiff has shown that NAPA purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws.

### B. WHETHER PLAINTIFF'S CLAIMS ARISE OUT OF NAPA'S WASHINGTON-RELATED ACTIVITIES

To determine whether a suit arises out of or relates to a defendant's specific contacts with the forum state, courts utilize a "'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard,* 65 F.3d at 1500 (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds* 499 U.S. 585 (1991)).

Therefore, the issue here is: but for NAPA's contacts with Washington, would Plaintiff's claims against NAPA have arisen? NAPA argues that Plaintiff cannot satisfy the but for test because it "does not manufacture, design, sell, supply, or distribute any parts, or place any automotive parts into the stream of commerce, does not exercise any control over the manufacture, distribution or sale of any automotive parts, or gain any financial benefit from the sale of any automotive part." Dkt. 213, at 7.

However, Plaintiff has offered significant evidence that Plaintiff's claims against NAPA would not have arisen but for NAPA's contacts in Washington, including marketing, sales, distribution, and benefiting from the sale of asbestos-containing products. *See* Dkt. 223. As discussed above in § II(A), evidence in conflict between NAPA and Plaintiff must be resolved in favor of Plaintiff in this Fed. R. Civ. P. 12(b)(2) motion.

Therefore, Plaintiff has shown that its claims arise out of NAPA's Washington-related activities.

### C. WHETHER THE EXERCISE OF JURISDICTION WOULD BE REASONABLE

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler v. Bauman*, 571 U.S. 117, 125 (2014). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.,* 95 Wn.App. 462, 465 (1999). We therefore inquire whether the exercise of jurisdiction here "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125 (2014).

The exercise of jurisdiction over a non-resident defendant comports with due process only if "the defendant has certain minimum contacts with the state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *State v. LG Electronics, Inc.*, 186 Wn.2d 169, 176 (2016) (quoting *Int'l Shoe*, 326 U.S. at 316). Under that standard, a defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court within the state. *Id*. at 356 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 268, 297 (1980)). "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger

*King*, 471 U.S. at 477–78. For a "state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Whether due process is satisfied must depend … upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

In determining whether the exercise of jurisdiction over a nonresident defendant is reasonable, courts consider seven factors: (1) the extent of defendant's purposeful interjection into the forum state's affairs; (2) the burden on defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiffs' interests in convenient and effective relief; and (7) the existence of an alternative forum. *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1075 (9th Cir. 2001) (citing *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1487–88 (9th Cir. 1993). "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Id.* (quoting *Core–Vent Corp.,* 11 F.3d at 1488).

The exercise of jurisdiction here would be reasonable. NAPA argues "[t]here is nothing to suggest that NAPA might reasonably expect to be haled into a product liability action in the State of Washington by simply licensing a logo and trademark from its home state of Georgia (formerly Michigan)." Dkt. 213, at 8. However, Plaintiff's evidence showing that NAPA sold, marketed, and distributed asbestos-containing products in Washington constitutes a substantial connection between NAPA's suit-related conduct and Washington. As discussed above in §II(A), evidence in conflict between NAPA and Plaintiff must be resolved in favor of Plaintiff in

this Fed. R. Civ. P. 12(b)(2) motion. Based on the evidence offered by Plaintiff, NAPA should reasonably expect to be haled into court in Washington despite being a limited liability corporation with its principal place of business in Georgia. Additionally, the Court's consideration of the *Myers* factors above tilts in favor of Plaintiff. Therefore, NAPA has not offered a compelling case that jurisdiction is unreasonable.

### D. CONCLUSION

Plaintiff has made a prima facie showing of personal jurisdiction. *See Ballard,* 65 F.3d at 1498. NAPA claims that it "merely licenses the use of the 'NAPA' logo and trademark to its members and to certain authorized suppliers" and that "there are no facts to support the exercise of specific jurisdiction over NAPA in Washington." Dkt. 213, at 3. However, in response, Plaintiff has offered evidence from Steven, Mr. Smith, and corporate representatives of NAPA and GPC, which show that NAPA marketed, sold, distributed, and benefitted from the sale of asbestos-containing products in Washington. *See* § II(A)–(C), *supra*. In this Fed. R. Civ. P. 12(b)(2) motion, to the extent the evidence is in conflict between Plaintiff and NAPA, it must be resolved in the plaintiff's favor. *See Ballard,* 65 F.3d at 1498; *Rio Props.,* 284 F.3d at 1019.

Therefore, the Court should deny NAPA's Motion to Dismiss (Dkt. 213). The Court's decision here applies to the instant motion under Fed. R. Civ. P. 12(b)(2) as a motion to dismiss, and it was not made under the standards of or with respect to any motion for summary judgment.

### III. ORDER

THEREFORE, it is HEREBY ORDERED that Defendant National Automotive Parts Association's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 213) is **DENIED**.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 4th day of June, 2019.

*Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge