UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>              Plaintiff,<br>   v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>              Defendants. | CASE NO. 3:18-cv-05536-RJB<br><br>ORDER GRANTING DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Air & Liquid Systems Corporation's ("Air & Liquid") Motion for Summary Judgment. Dkt. 346. The Court is familiar with the record herein and has reviewed the motion and documents filed in support of and in opposition thereto, and it is fully advised. Oral argument is unnecessary to decide this motion.

For the reasons set forth below, Air & Liquid's Motion for Summary Judgment should be granted.

ORDER GRANTING DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S MOTION FOR SUMMARY JUDGMENT - 1

# I. BACKGROUND

This is an asbestos case. Dkt. 168. The above-entitled action was commenced in Pierce County Superior Court of October 27, 2017. Dkt. 1-1, at 6. Notice of removal from the state court was filed with this Court on July 3, 2018. Dkt. 1-1.

In the operative complaint, Plaintiff alleges that Rudie Klopman-Baerselman ("Decedent") was exposed to asbestos-containing products sold or supplied by various defendants, including Air & Liquid, causing Decedent injuries for which Air & Liquid is liable. Dkt. 168. Decedent was diagnosed with mesothelioma on approximately July 11, 2017, and died on November 25, 2017, before being deposed. Dkts. 168, at 4; and 374, at 7.

The complaint provides that "Decedent [] was an employee of Royal Dutch Lloyd, Rotterdam Lloyd and worked as a merchant mariner assigned to several vessels. While performing his duties as a boiler oilman/stoker from approximately 1955 through 1959, Decedent [] was exposed to asbestos, asbestos-containing materials and products while aboard the vessels." Dkt. 168, at 6. Plaintiff provides that "[Decedent] worked as an oilman aboard three steam-driven ships: (1) the *SS Friesland*, formerly the *HMS Ranee* and *USS Niantic* (CVE-46); (2) the *SS Waterman*, formerly the U.S.-built SS LaGrande Victory; and, (3) the *SS Kertosono*." Dkt. 374, at 2. Apparently, an inspection report of the *HMS Ranee* from 1943 recommends providing spare parts for a pump supplied by Buffalo Pump Corp. ("Buffalo"), the predecessor of Air & Liquid. Dkts. 374, at 2; and 375-2, at 7.

The complaint continues, "Decedent [] performed all maintenance work on his vehicles specifically friction work. Decedent [] performed maintenance to his vehicles, during the approximate years 1966 through 1997. Decedent [] was exposed to asbestos, asbestos materials and products while performing vehicle maintenance." Dkt. 168, at 6.

1  "Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.);

2  negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement

3  of Torts; premises liability; and any other applicable theory of liability." Dkt. 168, at 6.

4          Air & Liquid filed the instant Motion for Summary Judgment, arguing that Plaintiff is

5  unable to show that Decedent was exposed to asbestos-containing products attributable to Air &

6  Liquid, nor that any exposure was a substantial contributing factor in causing Decedent's injuries

7  and death. Dkt. 346. Air & Liquid further argues that maritime law should apply, and that

8  Plaintiff's claims fail under either maritime law or Washington state law. Dkt. 387, at 1–2, n.1.

9          Plaintiff responded in opposition to Air & Liquid's instant Motion for Summary

10  Judgment. Dkt. 374. Plaintiff does not discuss maritime law; Plaintiff couches its arguments in

11  Washington product liability. Dkt. 374, at 5–9. Plaintiff alleges that, while working aboard ships

12  in the Dutch merchant marine, Decedent "was around various machinery, including pumps, that

13  were covered with amosite asbestos insulation." Dkt. 374, at 7.

14          Plaintiff offers the opinion of James Delaney ("Mr. Delaney"), an apparent maritime and

15  naval expert retained by Toyota Motor Sales USA Inc. and Toyota Motor Corporation in this

16  case. Dkts. 374, at 7; and 375-1. Mr. Delaney opined that "[b]oth the USS Niantic and the La

17  Grande Victory were built during the years when the Navy and the Maritime Administration

18  required asbestos containing thermal insulation, including amosite, to be installed on steam and

19  chilled water systems … throughout … the ships." Dkt. 375-1, at 11. Mr. Delaney further opined

20  that "[Decedent] would have been in direct contact, or the close proximity to large quantities of

21  asbestos containing thermal insulation on a regular basis." Dkt. 375-1, at 12.

22          Plaintiff also offers the opinion of Ronald Gordon ("Dr. Gordon"), who apparently

23  conducted an electron microscope analysis of Decedent's lung tissue. Dkts. 374, at 3–4; and 375-

24

3. Dr. Gordon opines that "[Decedent] had a mixed asbestos exposure to chrysotile, crocidolite, amosite, tremolite/actinolite and anthophyllite …. These asbestos fibers were the causative factors in the development of [Decedent]'s malignant mesothelioma." Dkt. 375-3, at 7.

Plaintiff contends that "ship records showing that Buffalo supplied the distilling pump aboard the *SS Friesland*, combined with Delaney's and Gordon's expert opinions, is more than sufficient evidence under Washington law to raise genuine issues as to whether work on or around insulated Buffalo Pumps contributed to [Decedent]'s mesothelioma." Dkt. 374, at 8.

Air & Liquid replied in support of its Motion for Summary Judgment. Dkt. 387. Air & Liquid argues, in part, that the HMS *Ranee* 1943 inspection report and other documents should be disregarded as being inadmissible, unauthenticated, and hearsay. Dkt. 387, at 6.

## II.    DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**B. WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

**C. SUMMARY JUDGMENT ANALYSIS**

1. Washington Product Liability

"Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular

1  manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235,

2  245–47 (1987) (quoting *Martin v. Abbott Laboratories,* 102 Wn.2d 581, 590 (1984)).

3
4
5
6
7
8
9

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product. [] Hence, instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.

*Lockwood,* 109 Wn.2d at 246–47 (citations omitted).

10
11

*Lockwood* prescribes several factors for courts to consider when "determining if there is

sufficient evidence for a jury to find that causation has been established":

12
13

1. Plaintiff's proximity to an asbestos product when the exposure occurred;

2. The expanse of the work site where asbestos fibers were released;

14
15

3. The extent of time plaintiff was exposed to the product;

4. The types of asbestos products to which plaintiff was exposed;

16
17

5. The ways in which such products were handled and used;

6. The tendency of such products to release asbestos fibers into the air depending on their

18
19

   form and the methods in which they were handled; and

7. Other potential sources of the plaintiff's injury; courts must consider the evidence

20
21

   presented as to medical causation.

*Id.* at 248–49.

22
23

The Court has considered each of the *Lockwood* factors, none of which weigh in favor of

a finding that causation has been established. First, although Plaintiff's evidence relates to

24

Decedent's proximity to shipboard asbestos generally, it does not discuss proximity concerning an asbestos-containing product for which Air & Liquid is responsible. *See, e.g.,* Dkt. 375-1.

Second, although Mr. Delaney's opinion partially describes ships on which Decedent worked, it does not specifically describe shipboard expanses or work site expanses where asbestos fibers were released from a product for which Air & Liquid is responsible. *See* Dkt. 375-1.

Third, Plaintiff has not shown the extent of time, if any, that Decedent was exposed to any asbestos-containing products for which Air & Liquid is liable. *See, e.g.,* Dkt. 375-1.

Fourth, Plaintiff offers no evidence regarding the types of asbestos-containing products used by Decedent for which Air & Liquid is responsible. Plaintiff's evidence merely shows that a Buffalo pump may have been aboard the HMS *Ranee* in 1943, approximately twelve or more years before Decedent worked aboard the SS *Friesland. See* Dkt. 375-2, at 7.

Fifth, Mr. Delaney's opinion generally describes the use of valves, pumps, and various other pieces of machinery aboard ships, but it does not describe how Decedent used any asbestos-containing product for which Air & Liquid is responsible. *See* Dkt. 375-1.

Sixth, Plaintiff has not shown the tendency of an Air & Liquid product used by Decedent, if any, to release asbestos fibers into the air depending on its form and the methods in which it was handled. *See, e.g.,* Dkt. 375-1.

Finally, it appears that there may be many possible sources that could have caused Decedent's injuries and death. Decedent's merchant marine career aboard multiple ships and his automotive repair practice may have exposed him to asbestos from numerous asbestos-containing products produced by various manufacturers. Plaintiff did not offer a causation opinion from its medical causation expert regarding Air & Liquid. However, Plaintiff provided

1   the opinion of Dr. Gordon, opining generally that asbestos fibers were causative factors in the

2   development of Decedent's mesothelioma.

3           Plaintiff has not offered evidence regarding asbestos exposure proximity, regularity, or

4   duration with respect to any Air & Liquid product used by Decedent. Although Mr. Delaney's

5   opinion touches on asbestos exposure factors such as directness, quantity, proximity, and

6   frequency, it does so generally—not with respect to any asbestos exposure to a product for which

7   Air & Liquid is responsible.

8           Plaintiff has not offered evidence establishing a reasonable connection between

9   Decedent's injuries and death and products manufactured, sold, or supplied by Air & Liquid.

10  Even if the Court considers the HMS *Ranee* 1943 inspection report, together with the expert

11  opinions of Mr. Delaney and Dr. Gordon, Plaintiff does not show that Air & Liquid or a product

12  that it sold or supplied caused Decedent's injuries and death.

13          Plaintiff has offered no testimony of witnesses with personal knowledge of Decedent

14  using or otherwise being exposed to an asbestos-containing product for which Air & Liquid is

15  responsible. Plaintiff has not offered evidence showing, even viewed in a light most favorable to

16  Plaintiff, that Air & Liquid or products that it sold or supplied caused Decedent's injuries and

17  death. In consideration of the *Lockwood* factors above, the Court cannot determine that there is

18  sufficient evidence for a jury to find that causation—a necessary element of Plaintiff's claim—

19  has been established.

20          Therefore, the Court should grant Air & Liquid's Motion for Summary Judgment as to

21  Plaintiff's Washington product liability claim.

22

23

24

ORDER GRANTING DEFENDANT AIR & LIQUID SYSTEMS CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 8

1  The Court need not consider the further issue raised by Air & Liquid of whether exposure

2  to an asbestos-containing product sold or supplied by Air & Liquid was a substantial factor in

3  causing Decedent's injuries and death.

4      2.  Other Possible Claims

5      The operative complaint's causes of action are vague. *See* Dkt. 168, at 6 ("Plaintiff

6  claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence;

7  conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts;

8  premises liability; and any other applicable theory of liability.").

9      Air & Liquid argues that maritime law should apply (see Dkts. 346 and 387), but Plaintiff

10  does not discuss this at all. *See* Dkt. 374. In response to Air & Liquid's instant Motion for

11  Summary Judgment, Plaintiff limited its discussion of claims and theories to Washington product

12  liability. *See* Dkt. 374, at 5–9. In this order, the Court has done the same. *See* § II(C)(1), *supra*.

13      Regardless, causation is an essential element under either Washington product liability or

14  maritime-based tort law (see, e.g., *Lockwood*, 109 Wn.2d 235; *McIndoe v. Huntington Ingalls*

15  *Inc*., 817 F.3d 1170, 1176 (9th Cir. 2016); see also *Lindstrom v. A-C Product Liability Trust,* 424

16  F.3d 488, 492 (6th Cir. 2005)), and Plaintiff has not offered evidence showing that causation has

17  been established.

18      Plaintiff has not presented evidence sufficient to establish genuine issues of material fact

19  with respect to Plaintiff's broad claims against Air & Liquid for product liability, negligence,

20  conspiracy, strict liability under Section 402A and 402B of the Restatements of Torts, and

21  premises liability.

22

23

24

3.  Conclusion

Therefore, the Court should grant Air & Liquid's Motion for Summary Judgment (Dkt. 346) as to all of Plaintiff's claims against Air & Liquid and dismiss Air & Liquid from this case.

### III.    ORDER

Therefore, it is hereby ORDERED that:

- Defendant Air & Liquid Systems Corporation's Motion for Summary Judgment (Dkt. 346) is **GRANTED;** and

- Defendant Air & Liquid Systems Corporation is **DISMISSED** from the case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 9th day of October, 2019.

ROBERT J. BRYAN
United States District Judge