UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. 3:18-cv-05536-RJB<br><br>ORDER GRANTING DEFENDANT INGERSOLL-RAND COMPANY'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Ingersoll-Rand Company's ("I-R") Motion for Summary Judgment. Dkt. 344. The Court is familiar with the record herein and has reviewed the motion and documents filed in support of and in opposition thereto, and it is fully advised. Oral argument is unnecessary to decide this motion.

For the reasons set forth below, I-R's Motion for Summary Judgment should be granted.

ORDER GRANTING DEFENDANT INGERSOLL-RAND COMPANY'S MOTION FOR SUMMARY JUDGMENT - 1

# I. BACKGROUND & PENDING MOTION

## A. BACKGROUND

This is an asbestos case. Dkt. 168. The above-entitled action was commenced in Pierce County Superior Court of October 27, 2017. Dkt. 1. Notice of removal from the state court was filed with this Court on July 3, 2018. Dkt. 1.

In the operative complaint, Plaintiff alleges that Rudie Klopman-Baerselman ("Decedent") was exposed to asbestos-containing products sold or supplied by various defendants, including I-R, causing Decedent injuries for which I-R is liable. Dkt. 168. Decedent was diagnosed with mesothelioma on approximately July 11, 2017, and died on November 25, 2017, before being deposed. Dkts. 168, at 4; and 374, at 7.

In the operative complaint, "Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability." Dkt. 168, at 6. The operative complaint provides two general theories of asbestos exposure, and Plaintiff's original complaint, which is no longer the operative complaint, provided a third general theory of asbestos exposure. Dkts. 1-6; and 168.

First, the operative complaint provides that "Decedent … was an employee of Royal Dutch Lloyd, Rotterdam Lloyd and worked as a merchant mariner assigned to several vessels. While performing his duties as a boiler oilman/stoker from approximately 1955 through 1959, Decedent … was exposed to asbestos, asbestos-containing materials and products while aboard the vessels." Dkt. 168, at 6. Plaintiff states that Decedent worked in maintenance and repair aboard the SS *Friesland* and SS *Waterman*. Dkt. 372, at 4. Plaintiff offers evidence that purports

to show that I-R manufactured equipment used aboard the SS *Waterman* and SS *Friesland*. Dkts. 373-11; and 373-12.

Second, the operative complaint provides that "Decedent … performed all maintenance work on his vehicles specifically friction work. Decedent … performed maintenance to his vehicles, during the approximate years 1966 through 1997. Decedent … was exposed to asbestos, asbestos materials and products while performing vehicle maintenance." Dkt. 168, at 6.

Third, the original complaint provided that "[Decedent] was an employee of Defendants and worked for Tektronix in Beaverton, OR and Vancouver, WA. While performing his duties as a laborer from 1967 through 1998 … [Decedent] was exposed to asbestos, asbestos containing insulation materials, and other asbestos-containing products while working at Tektronix." Dkt. 1-6, at 5. Plaintiff withdrew this third general theory of asbestos exposure from the operative complaint. Dkt. 168, at 5–6.

**B. PENDING MOTION**

1. I-R's Motion for Summary Judgment

I-R filed the instant Motion for Summary Judgment, arguing that it "is entitled to summary judgment because Plaintiff has not adduced … evidence that [Decedent] was exposed to asbestos-containing products from [I-R] equipment when he was in the Dutch merchant marines, let alone evidence that exposures (if any) … were a substantial contributing cause of his mesothelioma." Dkt. 344, at 4.

2. Plaintiff's Response

Plaintiff responded in opposition to I-R's Motion for Summary Judgment. Dkt. 372. Plaintiff argues that it has submitted evidence sufficient to defeat I-R's Motion for Summary Judgment. Plaintiff argues and submits evidence purporting to show that Decedent's exposure to

asbestos from I-R products in the Dutch merchant marine contributed to the cause of his mesothelioma; and Decedent's exposure to asbestos from I-R products at Tektronix contributed to cause his disease. Dkt. 372.

Plaintiff submits, in part, the following evidence in support of his claim of asbestos exposure in the Dutch merchant marine: The opinions of Christopher Herfel and James Delaney, who are apparent naval and maritime experts, each opining that Decedent's work in the Dutch merchant marine would likely have exposed him to asbestos. Dkts. 364-2; and 373-10. Plaintiff further provides documentary evidence purportedly showing a large number and variety of I-R pumps aboard the SS *Waterman,* as well as compressors aboard the SS *Waterman* and SS *Friesland.* Dkt. 373-11; and 373-12. Plaintiff also provides evidence purportedly showing that I-R specified the use of amosite asbestos insulation on its pumps. Dkt. 373-13.

Plaintiff submits evidence in support of his claim of asbestos exposure at Tektronix. *E.g.,* Dkts. 373-6; and 373-7. Decedent's industrial hygiene expert, Susan Raterman ("Ms. Raterman"), in consideration of various depositions and evidentiary materials, opined that:

> [Decedent's] work at Tektronix removing asbestos gaskets would have exposed him to significant concentrations of asbestos fibers …, which would have contributed to his cumulative asbestos exposure dose. Further I find that [Decedent] was potentially exposed to significant concentrations of asbestos fibers greater than background levels associated with his work on Ingersoll-Rand pumps containing blue crocidolite gaskets."

Dkt. 373-6, at 18.

Plaintiff also cites to expert pathologists, including the opinion of Ronald Gordon ("Dr. Gordon"), who apparently conducted an electron microscope analysis of Decedent's lung tissue. Dkts. 374, at 3–4; and 375-3. Dr. Gordon opined that "[Decedent] had a mixed asbestos exposure to chrysotile, crocidolite, amosite, tremolite/actinolite and anthophyllite …. These asbestos fibers

were the causative factors in the development of [Decedent]'s malignant mesothelioma." Dkt. 375-3, at 7.

Concerning its Tektronix theory of asbestos exposure, Plaintiff argues that "I-R did not substantively address Plaintiff's exposures at Tektronix, and for this additional reason is not entitled to summary judgment." Dkt. 372, at 2. Plaintiff contends that "the allegations in Plaintiff's June 2018 'First Amended Complaint' are sufficiently broad to encompass later-acquired evidence." Dkt. 372, at 2. Plaintiff continues, "Should the Court disagree …, Plaintiff must be allowed to amend his complaint pursuant to Rule 15 to more closely conform to the evidence of Plaintiff's thirty-year career at Tektronix before the instant motion is decided. Such an order would not prejudice I-R." Dkt. 372, at 2.

### 3. I-R's Reply

I-R replied in support of its Motion for Summary Judgment. Dkt. 385. I-R addresses (1) Plaintiff's Dutch merchant marine theory of asbestos exposure, and (2) Plaintiff's Tektronix theory of asbestos exposure. First, I-R reiterates that Plaintiff has not offered admissible evidence that the ships on which Decedent allegedly worked had I-R asbestos-containing products. I-R argues that the Court should not consider or rely on Dkts. 373-11 and 373-12 offered by Plaintiff because they are unauthenticated and lack particularity. Dkt. 385, at 2. I-R contends, "[Dkts. 373-11 (Exh. K) and 373-12 (Exh. L)] are nearly 250 pages, and Plaintiff has not provided any specific reference points for either exhibit." Dkt. 385, at 2.

I-R further argues that "regardless of the [authentication and particularity] deficienc[ies], Plaintiff has not adduced admissible evidence that, while in the Dutch merchant marines, [Decedent] in fact worked with or around a piece of [I-R] equipment, had exposure to asbestos-containing products from that [I-R] equipment, or did so on a regular basis." Dkt. 385, at 3.

Second, concerning Tektronix asbestos exposure, I-R argues that Plaintiff cannot raise a claim not made in the operative complaint in response to a motion for summary judgment. Dkt. 385, at 3. I-R further argues that "Plaintiff's suggestion that he should be allowed to amend … his complaint to add allegations about Tektronix is irrelevant because, presently, he has not even filed a motion for leave to do so." Dkt. 385, at 8. I-R contends that Plaintiff has acted with undue delay, and possibly bad faith, and that an amendment at this point would prejudice I-R substantially. Dkt. 385, at 8–9.

## II. DISCUSSION

### A. MOTION TO AMEND

Under Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course within (A) 21 days after serving it or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . ." Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A motion to amend under Rule 15(a)(2) "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143, 1152 (9th Cir. 2011).

Plaintiff has not moved to file an amended complaint. Although leave to amend should be freely given when justice so requires, the Court will not grant leave to amend except by motion from a party.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

## C. WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## D. ADMISSIBLE EVIDENCE - AUTHENTICATION & PARTICULARITY

A trial court can consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Unauthenticated documents cannot be considered in a motion for summary judgment. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976).

In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*, 831 F.2d at 925 (citation omitted). However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *See* Fed. R. Evid. 901(b) (providing ten approaches to authentication); Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002).

At summary judgment, factual positions must be supported by:

> (A) citing to particular parts of materials in the record, including depositions, documents electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.

Fed. R. Civ. P. 56(c)(1)(A)–(B).

Plaintiff has offered Dkts. 373-11 (Exh. K) and 373-12 (Exh. L), altogether 244 pages in length, in support of his factual positions concerning the presence of I-R products aboard Dutch merchant marine ships. Dkt. 372, at 5–6. However, Plaintiff has not discussed authentication or self-authentication as described in Fed. R. Evid. 901(b) and 902. *See* Dkts. 372; and 373. Nor has Plaintiff moved for leave to file a surreply or otherwise respond in opposition to I-R's reply, which alleges that Dkts. 373-11 and 373-12 are unauthenticated and that Plaintiff's citations thereto lack particularity with no reference to any page numbers. *See* Dkts. 372; and 385.

Plaintiff's citations to Dkts. 373-11 and 373-12 provide no specific page numbers and offer no explanation or elaboration as to how the citations' lengthy and unapproachably technical contents support what Plaintiff claims they mean. *See* Dkts. 372; and 373. Nevertheless, the Court has reviewed the documents and observed only that "Ingersoll-Rand" appears associated with unfamiliar equipment referenced in an inexplicable mess of documents. *E.g.,* Dkt. 373-11, at 51. Therefore, Plaintiff's citations to Dkts. 373-11 and 373-12 should not be considered in support of Plaintiff's factual positions at summary judgment.

The Court has also reviewed Plaintiff's evidence in Dkt. 373-13 (Exh. M) but cannot determine how it supports what Plaintiff suggests that it means. Plaintiff's response states that it shows that "I-R specified the use of amosite asbestos insulation on its pumps." The Court's

review of Dkt. 373-13 discerns only rough schematic drawings accompanied by mostly illegible words. However, among the few legible words are: "MAIN FEED PUMP SUGGESTED METHOD OF INSULATION" and "DETAIL E: METHOD OF FASTENING ASBESTOS INSULATING FELT BLANKETS." Dkt. 373-13, at 2. *See also* Dkt. 385, at 2, n.2. ( "[I-R] does not know what Exhibit M (Dkt. 373-13) shows or how it relates specifically to this case; the document is largely illegible, and Plaintiff does not explain its import."). Therefore, Plaintiff's citations to Dkt. 373-13 should not be considered in support of Plaintiff's factual positions at summary judgment.

### E. SUMMARY JUDGMENT ANALYSIS

1. Washington Product Liability

"Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 245–47 (1987) (quoting *Martin v. Abbott Laboratories,* 102 Wn.2d 581, 590 (1984)).

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product. Hence, instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.

*Lockwood,* 109 Wn.2d at 246–47 (citations omitted).

*Lockwood* prescribes several factors for courts to consider when "determining if there is sufficient evidence for a jury to find that causation has been established":

1. Plaintiff's proximity to an asbestos product when the exposure occurred;
2. The expanse of the work site where asbestos fibers were released;
3. The extent of time plaintiff was exposed to the product;
4. The types of asbestos products to which plaintiff was exposed;
5. The ways in which such products were handled and used;
6. The tendency of such products to release asbestos fibers into the air depending on their form and the methods in which they were handled; and
7. Other potential sources of the plaintiff's injury; courts must consider the evidence presented as to medical causation.

*Id.* at 248–49.

2. <u>Washington Product Liability Analysis</u>

    a. *Dutch Merchant Marine Exposure*

The Court has considered each of the *Lockwood* factors, none of which weigh in favor of a finding that causation has been established concerning Decedent's work as a merchant mariner. Plaintiff has not provided admissible evidence sufficient for a finder of fact to determine that causation has been established

First, although Plaintiff's evidence relates to Decedent's proximity to shipboard asbestos generally, it does not discuss proximity concerning an asbestos-containing product produced by I-R. *See, e.g.,* Dkt. 373-10.

1        Second, although Plaintiff's evidence partially describes ships on which Decedent worked, it does not specifically describe shipboard expanses or worksite expanses where asbestos fibers were released from an I-R product. *See, e.g.,* Dkt. 373-10.

      Third, Plaintiff has not shown the extent of time, if any, that Decedent was exposed to any asbestos-containing products produced by I-R. *See, e.g.,* Dkts. 372 and 373.

      Fourth, Plaintiff offers limited evidence of the types of asbestos-containing products to which Decedent was exposed. Plaintiff's evidence may show that Decedent was exposed to various types of asbestos fibers (Dkt. 375-3, at 7) and that Decedent likely worked with and was exposed to asbestos-containing products working in the Dutch merchant marine (Dkt. 373-10). But Plaintiff has not shown Decedent's exposure to any types of asbestos-containing products produced by I-R.

      Fifth, Plaintiff's evidence generally describes Decedent's possible use of valves, pumps, and various other pieces of machinery aboard ships (see, e.g., Dkt. 373-10), but it does not show that Decedent used any asbestos-containing product produced by I-R.

      Sixth, Plaintiff has not shown the tendency of an I-R product used by Decedent, if any, to release asbestos fibers into the air depending on its form and the methods in which it was handled.

      Finally, it appears that there may be many possible sources that could have caused Decedent's injuries and death. Decedent's merchant marine career aboard multiple ships, his automotive repair practice, and his thirty-year career at Tektronix may have exposed him to asbestos from asbestos-containing products produced by various manufacturers. Plaintiff offered expert opinion generally opining that asbestos fibers were the causative factors in the development of Decedent's mesothelioma. *See, e.g.,* Dkt. 373-8, at 7.

Plaintiff has not offered evidence showing that Decedent used or was exposed to any asbestos-containing product produced by I-R. Although Mr. Delaney's opinion touches on asbestos exposure factors such as directness, quantity, proximity, and frequency, it does so generally—not with respect to any asbestos exposure to an I-R product.

Plaintiff has not offered evidence establishing a reasonable connection between Decedent's injuries and death and products manufactured, sold, or supplied by I-R. Plaintiff has offered no testimony of witnesses with personal knowledge of Decedent using or otherwise being exposed to an asbestos-containing I-R product.

Plaintiff has not offered evidence showing, even viewed in a light most favorable to Plaintiff, that I-R or products that it sold or supplied caused Decedent's injuries and death. In consideration of the *Lockwood* factors above, the Court cannot determine that there is sufficient evidence for a jury to find that causation—a necessary element of Plaintiff's claim—has been established.

      b. *Tektronix Exposure*

Where a complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (citing *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'"); *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 968–69 (9th Cir. 2006) (holding that the complaint did not satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a) because the complaint "gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition to summary judgment").

| | |
|---|---|
| 1 | Plaintiff removed its claim related to asbestos exposure at Tektronix from the operative |
| 2 | complaint; therefore, Plaintiff failed to sufficiently present that claim. *See Navajo Nation*, 535 |
| 3 | F.3d at 1080. Furthermore, the Court concludes that Plaintiff's argument that "the allegations in |
| 4 | Plaintiff's June 2018 'First Amended Complaint' are sufficiently broad to encompass later- |
| 5 | acquired evidence" is without merit. *See Ramirez v. County of San Bernardino,* 806 F.3d 1002, |
| 6 | 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes |
| 7 | the original, the latter being treated thereafter as non-existent.") (quoting *Forsyth v. Humana,* |
| 8 | *Inc.,* 114 F.3d 1467, 1474 (9th Cir. 1997)). |

      c. *Conclusion*

Therefore, the Court should grant I-R's Motion for Summary Judgment as to Plaintiff's Washington product liability claim related to alleged asbestos exposure as a merchant mariner and as a worker at Tektronix. The Court need not consider the further issue alluded to by I-R of whether exposure to an asbestos-containing product produced by I-R was a substantial factor (a more stringent test) in causing Decedent's injuries and death.

    3. <u>Other Possible Claims</u>

The operative complaint's causes of action are vague. *See* Dkt. 168, at 6 ("Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability.").

I-R's Motion for Summary Judgment appears to discuss Plaintiff's claims under maritime law (see Dkts. 344, at 4; and 385, at 5, n.5), but Plaintiff does not discuss the application of maritime law. *See* Dkt. 372. In response to I-R's Motion for Summary Judgment, Plaintiff

limited its discussion of claims and theories to Washington product liability. *See* Dkt. 374, at 5–9. In this order, the Court has done the same. *See* § II(E)(1)–(2), *supra*.

Regardless, causation is an essential element under either Washington product liability or maritime-based tort law (see, e.g., *Lockwood*, 109 Wn.2d 235; *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1176 (9th Cir. 2016); see also *Lindstrom v. A-C Product Liability Trust,* 424 F.3d 488, 492 (6th Cir. 2005)), and Plaintiff has not offered evidence showing that causation has been established.

Plaintiff has not presented evidence sufficient to establish genuine issues of material fact with respect to Plaintiff's broad claims against I-R for product liability, negligence, conspiracy, strict liability under Section 402A and 402B of the Restatements of Torts, and premises liability.

4. Conclusion

Therefore, the Court should grant I-R's Motion for Summary Judgment as to all of Plaintiff's claims against I-R and dismiss I-R from this case.

### III. ORDER

Therefore, it is hereby ORDERED that:

- Defendant Ingersoll-Rand Company's Motion for Summary Judgment (Dkt. 344) is **GRANTED;** and
- Defendant Ingersoll-Rand Company's is **DISMISSED** from the case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of October, 2019.

ROBERT J. BRYAN
United States District Judge