The Honorable Robert J. Bryan
Trial Date: January 13, 2020

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, a Pennsylvania corporation, individually and as successor-by-interest to BUFFALO PUMPS, et al.,<br><br>Defendants. | No. 3:18-cv-05536-TLF<br><br>DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S PRETRIAL STATEMENT |

## DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S PRETRIAL

## STATEMENT

Foster Wheeler Energy Corporation "Foster Wheeler" makes the following Pretrial Statement, including its response to Plaintiff's Pretrial Statement:

### I.    JURISDICTION

Foster Wheeler agrees that Court has diversity jurisdiction over the above-captioned matter because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are residents of different states. 28 U.S.C. § 1332. This Court also has jurisdiction based on Title 28 U.S.C. §§1331, 1442(a)(1) and 1446.

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 1
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

## II.   DEFENSES

1.      Foster Wheeler specifically denies that it mined, milled, processed, manufactured, supplied, distributed, marketed or sold any products containing asbestos that are causally related to Mr. Klopman's alleged injuries.

2.      Whatever damages Plaintiff may have suffered, if any, were solely and proximately caused by, or contributed to by, the negligence of Plaintiff which either bars or reduces Plaintiff's claims herein in an amount to be determined by the trier of fact.

3.      Whatever damages Plaintiff may have suffered, if any, were solely and proximately caused by the negligence or other conduct of one or more of the other Defendants above-named, or, in the alternative, by the negligence or other conduct of some person, corporation, association, or legal entity not presently a party to this lawsuit.

4.      Whatever damages Plaintiff may have suffered, if any, were solely and proximately caused by the Plaintiff when he assumed and voluntarily exposed himself to specific and appreciated risks pursuant to the doctrines of <u>volenti non fit injuria</u> and assumption of the risk, for which Plaintiff is barred from recovery of damages or, in the alternative, for which recovery is reduced.

5.      Whatever damages Plaintiff may have suffered, if any, were directly and proximately caused by the actions of fellow servants of Plaintiff.

6.      Whatever damages Plaintiff may have suffered, if any, were due solely or in part to the failure of Mr. Klopman's employer or employers to take adequate precautions and provide him/her with a safe place to work.

7.      Foster Wheeler expressly denies that Mr. Klopman was ever exposed to fibers from asbestos-containing products, machinery or equipment for which Foster Wheeler is liable. Notwithstanding, any asbestos-containing products, machinery or equipment for which Foster Wheeler might be held legally accountable and which Plaintiff allegedly used or was exposed to, if any, were not in the same condition as when sold, having been materially altered after the sale and prior to the use or exposure as alleged.

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 2
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

8.      Any asbestos-containing products, machinery or equipment for which Foster Wheeler might be held legally accountable and which are alleged to have caused Plaintiff's injury or death, were manufactured in compliance with and supplied pursuant to government contracts and reasonably precise government and/or military specifications promulgated and approved by the United States government.  These specifications may have required the use of asbestos in such products, machinery or equipment.  Accordingly, Foster Wheeler may be immune from liability for any injury or death suffered by Mr. Klopman as consequence of exposure to asbestos in such products, machinery or equipment.

9.      Foster Wheeler's conduct, and any product, machinery or equipment for which it bears responsibility, was at all times in strict conformity with the prevailing standard of medical science and the prevailing standards of the industry.

10.     If it is proven at the time of trial that Foster Wheeler is liable for damages if any, to the Plaintiff, said liability is not sole but rather joint and several between or among Foster Wheeler and one or more of the other Defendants or non-Defendant corporations and, consequently, Foster Wheeler is entitled to have its liability limited to its proportionate share, or alternatively, is entitled to contribution from such other Defendants or non-Defendant corporations based on comparative fault.

11.     The liability of Foster Wheeler, if any, was secondary, passive and subordinate to the primary, active and intervening causation of the negligent acts and/or omissions of other Defendants, for which Foster Wheeler is not liable.

12.     Plaintiff has failed to mitigate his damages as required by law.

13.     Mr. Klopman was employed by knowledgeable and sophisticated employers and any duty Foster Wheeler may have had to warn him of any potential harm incident to the normal use of products for which Foster Wheeler bears responsibility, which duty is denied, was discharged by his employer's intervening duty to give him/her any required warnings.

14.     Foster Wheeler alleges that Mr. Klopman's tobacco use is an assumption of a known risk, and that said conduct of Plaintiff proximately caused and contributed to Plaintiff's injuries and

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 3
Case No.: 3:18-cv-05536-RJB

damages, if any, and therefore the recovery of Plaintiff, if any, is barred or proportionately reduced. Mr. Klopman served in the Dutch Merchant Marines from 1955 to 1959.  There is no evidence that Mr. Klopman sailed into a Washington port or US navigable waters. Mr. Klopman's alleged exposure to any Foster Wheeler equipment occurred in the Netherlands aboard a Dutch vessel.

15.     Foster Wheeler alleges that Plaintiff's injury, damages or loss, if any, was proximately caused by one or more unforeseeable, independent, intervening or superseding events beyond the control, and unrelated to any conduct of Foster Wheeler.  Any actions or omissions of Foster Wheeler were superseded by the negligence and wrongful conduct of others.

16.     Mr. Klopman was a knowledgeable and sophisticated automobile maintainence worker.  Per Plaintiffs' complaint, Mr. Klopman performed maintenance to his vehicles during the years of 1966-1997. Moreover, he was employed by knowledgeable and sophisticated employers and any duty Foster Wheeler may have had to warn him of any potential harm incident to the normal use of products for which Foster Wheeler bears responsibility, which duty is denied, was discharged by his employer's intervening duty to give him/her any required warnings as well as his own knowledge and duty to take precautionary measures when working with or around asbestos-containing products.

### III.     UNDISPUTED FACTS

1.     This lawsuit was originally filed in October 2017 by Rudie Klopman-Baerselman (Mr. Klopman) and his wife Muriel Klopman.

2.     Mr. Klopman died one month after this case was filed and was never deposed.

3.     Mr. Klopman died on November 25, 2017.

4.     Plaintiff alleges that decedent Mr. Klopman was diagnosed with mesothelioma in July 2017.

5.     Plaintiff alleges that Mr. Klopman was an employee of Royal Dutch Rotterdam Lloyd and worked as a merchant mariner assigned to several vessels as a boiler oilman/stoker from approximately 1955 through 1959.

6.     There is no witness or document that identifies the specific work that Mr. Klopman performed on any specific vessel in the Dutch Merchant Marine.

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 4
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

7. There is no witness or document that identifies the specific work that Mr. Klopman performed on any specific equipment in the Dutch Merchant Marine.

8. There is no witness or document that identifies the proximity of Mr. Klopman to any asbestos-containing product or equipment in the Dutch Merchant Marine.

9. There is no witness or document that identifies any work that Mr. Klopman performed on or around a Foster Wheeler boiler.

10. There is no witness or document that identifies the frequency that Mr. Klopman was in the presence of any maintenance on any asbestos-containing product or equipment in the Dutch Merchant Marine.

11. There is no witness or document that identifies the intensity of any potential asbestos exposure that Mr. Klopman experienced in the Dutch Merchant Marine.

12. There is no witness or document that identifies the duration of any asbestos exposure that Mr. Klopman experienced in the Dutch Merchant Marine.

13. Plaintiff filed pleadings with this Court, which are signed by his counsel, in which he concedes that there is no evidence "to support [the] position that Rudie Klopman-Baerselman was exposed to asbestos while in the merchant marines(sic) or that the alleged asbestos exposure was a substantial factor in the development of his mesothelioma."  (ECF 489 at 2:5-8)

14. No expert witness retained by Plaintiff in this matter has offered any opinion that Mr. Klopman was exposed to asbestos from a Foster Wheeler product during his time in the Dutch Merchant Marine.

15. Plaintiff's expert Susan Raterman testified that she could not form an opinion as to any particular asbestos exposure that Mr. Klopman had in the Dutch Merchant Marine without knowing the work activities that he performed.

16. Plaintiff's expert Dr. Andrew Brodkin testified that he had no information as to the frequency, intensity, duration, or proximity of any potential exposures that Mr. Klopman experienced in the Dutch Merchant Marine.

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 5
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

1      17.    Mr. Klopman performed all maintenance, specifically friction work, on his

2  personal automobiles/vehicles from 1966-1997.

3      18.    Mr. Klopman's work on personal vehicles included work with asbestos-

4  containing brake, clutch, and engine parts.

5      19.    Plaintiff alleges that Mr. Klopman was exposed to asbestos while performing

6  vehicle maintenance.

7      20.    Plaintiff alleges that Mr. Klopman's exposure to asbestos from performing

8  vehicle maintenance was a substantial factor in causing his mesothelioma.

9      21.    Foster Wheeler admitted in its responses to Plaintiff's Requests for Admission

10  that Mr. Klopman's exposure to asbestos from performing vehicle maintenance was a substantial

11  factor in causing his mesothelioma.

12      22.    Mr. Klopman worked as a maintenance technician at Tektronix in Beaverton,

13  Oregon from 1967 through 1999.

14      23.    Ray Smith is a coworker of Mr. Klopman's from Tektronix.

15      24.    Mr. Smith testified that Mr. Klopman performed maintenance on machinery and

16  equipment at Tektronix.

17      25.    Mr. Smith testified that Mr. Klopman performed maintenance work on pumps at

18  Tektronix.

19      26.    Mr. Smith testified that there was asbestos insulated piping throughout the

20  Tektronix facility.

21      27.    Mr. Smith testified that Mr. Klopman performed work on insulated piping at

22  Tektronix.

23      28.    Gearhart Dauter is a coworker of Mr. Klopman's from Tektronix.

24      29.    Mr. Dauter testified as to asbestos abatement that occurred at Tektronix.

25      30.    Mr. Dauter testified that Mr. Klopman performed maintenance work on pumps,

26  valves, and pipe insulation at Tektronix.

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 6
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

31.     Plaintiff's expert Susan Raterman testified that Mr. Klopman was likely exposed to asbestos at Tektronix through the repair and maintenance of valves, pumps, compressors and piping.

## IV.    ISSUES OF LAW

Foster Wheeler has a pending motion for summary judgment to dismiss all claims.  In that motion, Foster Wheeler has asserted application of Dutch law.  Pursuant to Dutch law, Plaintiff's claims are time barred.  Even if the Court finds that substantive Dutch law does not apply to this case, Plaintiff's claims should still be dismissed under Maritime law or Washington law based on Plaintiff's inability to establish causation, as set forth in Foster Wheeler's pending motion.

## V.    WITNESSES

1.  Richard Johnson (may testify live; by video preservation; or prior testimony)
    c/o Tanenbaum Keale LLP
    1085 Raymond Blvd.
    One Newark Center, 16th Floor
    Newark, New Jersey 07102

Richard C. Johnson is a ceramics engineer.  He is a former employee of Foster Wheeler.  Mr. Johnson will testify about his background, knowledge and experience with the use of insulation products.  Mr. Johnson may testify about his attendance at a meeting of the Working Group on Insulation Industry Hygiene hosted by Irving Selikoff, M.D. at the New York Academy of Sciences on May 14, 1968 and what was understood at Foster Wheeler at the time regarding asbestos.  He may testify regarding his and Foster Wheeler's understanding of safe working levels of asbestos exposure and the efforts of the medical and scientific community to investigate and define maximum exposures which presented health risks to insulation workers.

Mr. Johnson may testify with the regard to the efforts made by Foster Wheeler to find acceptable alternatives to the use of any asbestos- containing products in its boilers and equipment.  He may also testify to his experience with regard to repair of Foster Wheeler equipment and Mr. Johnson may testify with regard to his knowledge relative to design, operation and function of Foster

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 7
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

Wheeler boilers and equipment.  Mr. Johnson may testify about safety precautions, procedures and safety equipment available to Foster Wheeler employees.

Because of his health condition, Mr. Johnson may not be able to travel to Tacoma for trial, and Foster Wheeler may perpetuate his testimony for trial. Plaintiff has also submitted page and line designation from Mr. Johnson's prior testimony. Foster Wheeler has made counter-designations to that testimony.

2.   Thomas Schroppe (will testify live)
c/o Tanenbaum Keale LLP
1085 Raymond Blvd.
One Newark Center, 16th Floor
Newark, New Jersey 07102

Mr. Schroppe received a degree in Marine Engineering from the New York State Maritime College in 1962.  He began his career at Foster Wheeler in 1962 as a Proposal Engineer in the Marine Department.  In 1967, he became the Manager of the Proposal Department and reviewed all proposals.  In 1969, he was promoted to Vice President of Engineering.  From 1975 to 1982, he was President of Foster Wheeler Boiler Corporation.  In 1982, he became Managing Director of Foster Wheeler U.K.  From 1984 to until his retirement in 1999, he was Executive Vice President of Foster Wheeler Power Systems.

Mr. Schroppe is expected to testify as to the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for boilers and auxiliary equipment.  Mr. Schroppe is familiar with these procedures through his personal involvement in such contracts at all stages of development, from inquiry and bid through production, testing, and sea trials and, ultimately, acceptance.  Mr. Schroppe is expected to testify as to the contract process from the perspective of Foster Wheeler as the vendor, as well as the levels of interaction between Foster Wheeler and the Navy agents and personnel through the various stages of a given contract.

Mr. Schroppe is expected to testify as to all phases of the design of a vessel.  Mr. Schroppe is expected to testify as to the pervasive control exercised by the Naval architect.  He will testify about Foster Wheeler's obligation to comply with the Ship Specifications, which includes all boiler

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 8
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

operating criteria and performance requirements, as well as the Military Specifications that covered all specific components of the boiler, including accessories, subcomponents, and materials required to fabricate the boilers and its components.  He is also expected to testify that deviation from these specifications was not acceptable.

Mr. Schroppe is expected to testify that during manufacture of the boiler, a Navy resident inspector was present at Foster Wheeler's shops.  The Navy inspector would review all fabrication processes and materials used for conformity to Military Specifications.

Mr. Schroppe may testify that Foster Wheeler was obligated to provide technical manuals for the boilers furnished in a given Navy contract.  He will testify that the Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers such as engineering drawings, test reports, safety information and other technical data that could be used as needed by shipboard engineering officer during the life of the equipment.  He will testify that the Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents.

3.  Thomas P. Howard, M.D. (may testify live)
    785 Indian River Drive
    Melbourne, Florida  32935
    (321) 637-3510

Dr. Howard is a board-certified pulmonologist who may provide testimony on state of the art issues concerning the evolution of knowledge about asbestos and disease in various work groups and various types of asbestos-containing products.  He may testify concerning the state of the art of medical knowledge regarding asbestos-related disease throughout the 20th century.

In addition, Dr. Howard may testify about medical, scientific, and industry knowledge regarding asbestos in the regulatory context, beginning with the first such regulations implemented in Britain in 1931 after publication of the Merewether Report in 1930.  He may further testify about additional studies and regulations, including but not limited to Dreessen in 1938, subsequent adoption by state and federal authorities of published occupational health regulations pertaining to exposures to many substances including asbestos, yearly review of

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 9
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

1   threshold limit values (TLVs) pertaining to asbestos by the American Conference

2   of Governmental Industrial Hygienists (ACGIH) starting in 1946, and the OSHA regulatory

3   scheme beginning in 1970/71 establishing the Federal level detailed requirements to employers

4   for control of asbestos in the workplace.  He may testify that these regulations required

5   workplace warnings, ventilation, medical examinations and other procedures for controlling

6   exposures to asbestos, and required warnings on those finished asbestos-containing products

7   wherein the ordinary use was thought to release asbestos from the product above regulatory

8   levels (it should be noted that by 1972 most manufacturers of asbestos insulation materials, such

9   as Owens-Corning and Johns Manville were already placing warnings on the products dating

10  back to the mid-1960s).

11      Dr. Howard may also provide opinions on the medical condition of Plaintiff or Plaintiff's

12  decedent and whether that condition is related to asbestos exposure.  He may testify concerning

13  method of diagnosis and characteristics of asbestos-related lung disease.  This may include, but not

14  be restricted to, commentary regarding physical examination of the chest, pulmonary function testing

15  and chest radiographic findings.  Dr. Howard will rely on his years of experience in clinical

16  medicine as a faculty member at the University of South Florida College of Medicine, as well as his

17  private practice of Pulmonary and Critical Care Medicine and current medical literature for his

18  testimony.  He may also refer to the International Classification of Radiographs of Pneumoconiosis

19  as outlined by the International Labor Office Standard Set of Films utilized as a Certified B Reader

20  for this testimony.

21      Dr. Howard's personal file containing over 1,000 articles relating to these topics will be

22  utilized as a basis of his testimony.  The vast majority of this literature represents peer review

23  published scientific literature which he began gathering during his residency in the late 1970s.  Dr.

24  Howard may also review and rely upon case-specific materials generated during discovery in this

25  case as bases for both his general and case specific opinions.

26      //

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 10
Case No.: 3:18-cv-05536-RJB

1

    4.  Dr. Lawrence Stilwell Betts, MD, Ph.D., CIH, FACOM (may testify live)
       13 Dryden Dr.

2

       Poquoson, Virginia  23662

3

    Dr. Betts may testify regarding the historic use of asbestos by the United States Navy.  He

4

may discuss the use of asbestos aboard ships including its uses and utility.  He may discuss the

5

different types of Navy vessels including their use and operation in defense of the United States

6

during peace and wartime.  He may describe for the jury the operation of the vessels, different types

7

of ship systems and how asbestos was considered integral to these functions.  He may describe the

8

various types and places asbestos was used aboard ships, the manner with which it was applied and

9

the historic reasons for use of asbestos materials.

10

    Dr. Betts is expected to describe the historic knowledge of the United States Navy and other

11

government entities regarding medical and scientific literature pertaining to safe use of asbestos

12

containing materials.  He may testify regarding health and safety programs instituted by the Navy for

13

safe use of asbestos-containing materials.  He may identify government and Navy related literature,

14

articles, regulations and other documents evidencing the Navy's historic knowledge pertaining to

15

asbestos containing materials and methods of application from the 1920s to the 1970s.  In addition,

16

he may discuss the Navy's program to find substitute materials for asbestos in the late 1960s through

17

the 1970s.

18

    Dr. Betts may describe for the jury historic aspects of development of the United States

19

Navy.  Included with this testimony may be a description of Navy protocol and tradition including

20

the implementation of military personnel, chain of command, promotion and discipline, rank and

21

assignments, maintenance and repair of ships by personnel and other matters that reflects on the

22

ordinary performance of duties and assignments by Navy personnel.

23

    Dr. Betts has reviewed and may discuss both medical and scientific literature pertaining to

24

Industrial Hygiene, Medicine and other historic materials regarding asbestos and its multiple uses

25

and utility.  Included may be a discussion of Threshold Limit Values ("TLV"), government

26

regulations, the American Conference of Governmental and Industrial Hygienists ("ACGIH"),

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 11
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

published studies by numerous researchers and government documents pertaining to safe use and handling of asbestos and asbestos health hazards.

Dr. Betts may be asked hypothetical questions pertaining to Plaintiff or Plaintiff's decedent. He may testify regarding Plaintiff's or Plaintiff's decedent's job functions and military rank, where applicable.  He may discuss the use and types of asbestos materials to which Plaintiff or Plaintiff's decedent may have been exposed, how these materials were applied and the purpose of the same.  He may describe the installation and use of Foster Wheeler equipment aboard Navy ships and how asbestos was used by the Navy to support operation of the equipment.  He will address "failure to warn" issues and the impact such warnings would have had on the Navy's decision to use asbestos. In addition, Dr. Betts may discuss Navy purchase and procurement programs and the development and use of government specifications of approved products.

Dr. Betts may discuss operation of Navy ships during war and peacetime.  He may describe the dangers and risks associated with such operation including hazards associated with fires aboard ships.  He may discuss the vital purpose for insulation materials to protect those aboard ship from these hazards as described in historic documents.

    5.  Eric Svendsen (may testify live)
        c/o Tanenbaum Keale LLP
        Gateway Center, Suite 1301
        Newark, New Jersey 07102

Eric Svendsen is a former employee of various Foster Wheeler entities and former Executive Vice President for Foster Wheeler North America. He is a professional engineer. Mr. Svendsen will testify about his training and background, in addition to his knowledge and experience with Foster Wheeler equipment.  Mr. Svendsen may testify about his knowledge of Richard C. Johnson's attendance at a meeting of the Working Group on Insulation Industry Hygiene hosted by Irving Selikoff, M.D. at The New York Academy of Sciences on May 14, 1968 and what was understood by Foster Wheeler regarding the potential hazards of asbestos containing products when used on its equipment at industrial sites, ships and shipyards. He may testify regarding Foster Wheeler's understanding of safe working levels of asbestos exposure and the efforts of the medical and

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 12
Case No.: 3:18-cv-05536-RJB

scientific community to investigate and define maximum exposures which presented health risks to insulation workers.  Mr. Svendsen may testify with regard to the efforts made by Foster Wheeler to find acceptable alternatives to the use of any asbestos-containing products in its boilers and equipment.  Mr. Svendsen may testify with regard to his knowledge relative to the design, operation, function and repair of Foster Wheeler boilers and auxiliary equipment.  Mr. Svendsen may testify about safety precautions, procedures and safety equipment that were available to Foster Wheeler employees, and will testify about Foster Wheeler's Corporate policy discontinuing the use of asbestos-containing products.

6.   Daniel Bessmer (may testify by prior transcript)

Deceased

Daniel Bessmer was the Industrial Hygienist at PSNS from 1949 until November 1971 when he took the position of Supervisory health physicist at PSNS until retirement in June 1972. He will testify by way of prior deposition testimony about the Navy's health and safety practices at Puget Sound Naval Shipyard and his involvement related to the same.

7.   Carl Mangold (may read prior testimony and/or play prior video)

Deceased

Carl Mangold was an industrial hygienist at PSNS from July 1962 through April 1972 at PSNS (he became a CIH in 1969). He will testify by way of prior deposition testimony about the Navy's health and safety practices at Puget Sound Naval Shipyard and his involvement related to the same.

8.   Roger Becket (may read prior transcript)

Deceased

Roger Beckett was the industrial hygienist at PSNS working below Carl Mangold.  Mr. Beckett assisted with the sampling, observations and design of the asbestos safety measures at PSNS.  He also remained at PSNS after Mangold left and Bessmer retired.  He was one of the authors of the 1978 PSNS gasket study. He will testify by way of prior deposition testimony about

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 13
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

1  the Navy's health and safety practices at Puget Sound Naval Shipyard and his involvement related to

2  the same.

3       9.  Jerry L. Helser (may testify by prior transcript)

4      Deceased

5      Mr. Helser has a Bachelor of Science degree from Otterbein College. He was employed by

6  Owens Corning Fiberglas ("OCF") in the Research and Development and Manufacturing divisions

7  responsible for OCF's production of thermal pipe insulation beginning in 1961. He worked in both

8  the OCF plant which produced Kaylo (an insulation product) and also in the OCF laboratories.

9  Specifically, during the mid-1960's, he worked as a Quality Control Supervisor for OCF. His job

10  responsibilities included overseeing the placement of warnings on boxes of OCF' s "Kaylo" brand

11  asbestos-containing thermal insulation that was manufactured and shipped from the OCF plant

12  located in Berlin, New Jersey. In addition, while employed by OCF in the 1960's, he was involved in

13  a program to audit the products of OCF's competitors.

14      Mr. Helser may testify as to facts and opinions regarding manufacture, distribution and

15  labeling of asbestos insulation products, including the warning labeling of such products by

16  manufacturers including Owens Corning Fiberglas, Johns-Manville and others beginning in the mid-

17  1960's based upon his experience, training and work with Owens Corning Fiberglas. He may testify

18  about and identify such warning labeling, the timing of such, the box labeling and distribution of

19  such. He may also testify as to the time period in which such products were asbestos-containing, the

20  types of asbestos, amosite, and use of such products. The materials upon which he will rely include

21  his experience, participation and view of such processes.

22              **VI.   EXHIBIT LIST**

23      Foster Wheeler's Exhibit List is attached as Exhibit A.

24      //

25      //

26      //

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 14
Case No.: 3:18-cv-05536-RJB

1    DATED this 6th day of December, 2019.        TANENBAUM KEALE, LLP

2

3                                                  By: s/Christopher S. Marks
                                                   By: s/Erin P. Fraser
4                                                  Christopher S. Marks, WSBA #28634
                                                   Erin P. Fraser, WSBA #43379
5

6                                                  Tanenbaum Keale, LLP
                                                   One Convention Place
7                                                  701 Pike Street, Suite 1575
                                                   Seattle WA 98101
8                                                  (206) 889-5150
9                                                  Email:    cmarks@tktrial.com
                                                             efraser@tktrial.com
10                                                            seattle.asbestos@tktrial.com

11                                                 Attorneys for Foster Wheeler Energy Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 15
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brian D. Weinstein
Alexandra Caggiano
WEINSTEIN CAGGIANO PLLC
601 Union Street, Suite 2420
Seattle, WA  98101
Phone:  (206) 508-7070
FAX#:  (206) 237-8650
Email:  service@weinsteincaggiano.com
*Attorneys for Plaintiffs*

Benjamin H. Adams (admitted pro hac vice)
DEAN OMAR & BRANHAM, LLP
302 N. Market Street, Suite 300
Dallas, TX 75202
Phone:  (214) 722-5990
FAX#:  (214) 722-5991
Email:  badams@dobllp.com
Dsmith-hogan@dobllp.com
cweeks@dobllp.com
*Attorneys for Plaintiffs*

Mary Z. Gaston
Kristine E. Kruger
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
FAX: (206) 359-9000
Email: MGaston@perkinscoie.com
KKruger@perkinscoie.com
HW_Asbestos_SEA@perkinscoie.com
*Attorneys for Honeywell International, Inc.*

Jeanne F. Loftis
BULLIVANT HOUSER BAILEY
888 SW Fifth Avenue, Suite 300
Portland, OR  97204-2089
Phone: (503) 228-6351
FAX #: (503) 295-0915
Email:  asbestos-pdx@bullivant.com
*Attorneys for Genuine Parts Company*

J. Michael Mattingly
Kevin Clonts
RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue, Suite 330
Portland, OR  97201-3530
Phone: (503) 229-1819
FAX #: (503) 229-0630
Email: asbestos@rizzopc.com
*Attorneys for Saint-Gobain Abrasives, Inc.*

Stephen G. Leatham
HEURLIN, POTTER, JAHN, LEATHAM &
HOLTMANN, P.S.
211 E. McLoughlin Boulevard, Suite 100
P.O. Box 611
Vancouver, WA  98666-0611
Phone: (360) 750-7547
FAX #: (360) 750-7548
Email:  sgl@hpl-law.com
*Attorneys for O'Reilly Automotive Stores, Inc.*

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 16
Case No.: 3:18-cv-05536-RJB

TANENBAUM KEALE, LLP
One Convention Place
701 Pike Street, Suite 1575
Seattle WA 98101
(206) 889-5150

1   Richard D. Ross

Diane J. Kero

2   Michael J. Madderra

GORDON, THOMAS, HONEYWELL LLP

Jennifer Gannon Crisera

600 University Street, Suite 2100

3   BENNETT BIGELOW & LEEDOM, P.S.800

Seattle, WA 98101

601 Union Street, Suite 1500

Phone: (206) 676-7500

4   Seattle, WA 98101-1363

FAX #: (206) 676-7575

Phone: (206) 622-5511

Email: service@gth-law.com

5   FAX #: (206) 622-8986

***Attorneys for Pneumo Abex, LLC***

Email: rross@bbllaw.com

6   mmadderra@bbllaw.com

LButler@bbllaw.com

7   ***Attorneys for BorgWarner Morse Tec, LLC.***

8

Michael E. Ricketts

Christine Dinsdale

9   GORDON, THOMAS, HONEYWELL LLP

Frances Lopez

600 University Street, Suite 2100

Rachel Rubin

10  Seattle, WA 98101

SOHA & LANG, P.S.

Phone: (206) 676-7500

1325 Fourth Avenue, Suite 2000

11  FAX #: (206) 676-7575

Seattle, WA 98101

Email: service@gth-law.com

Phone: (206) 624-1800

12  ***Attorneys for DCo LLC***

FAX#: (206) 624-3585

***fka Dana Companies LLC***

Email: asbestos@sohalang.com

13  

dinsdale@sohalang.com

14  

Rubin@sohalang.com

15  

flopez@hptylaw.com

jjaeschke@hptylaw.com

16  

***Attorneys for Federal-Mogul Asbestos Personal***

***Injury Trust***

17

18          Signed at Seattle, Washington this 6th day of December, 2019.

19

20                    s/Maria Tiegen

Maria Tiegen

21                    TANENBAUM KEALE LLP

One Convention Place

22                    701 Pike Street, Suite 1575

Seattle WA 98101

23                    Telephone: (206) 889-5155

Email: mtiegen@TKTrial.com

24

25

26

---

DEFENDANT FOSTER WHEELER ENERGY
CORPORATION'S PRETRIAL STATEMENT - 17
Case No.: 3:18-cv-05536-RJB