UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. 3:18-cv-05536-RJB<br><br>ORDER ON DEFENDANT PNEUMO ABEX, LLC'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Pneumo Abex, LLC's (Pneumo Abex") Motion for Summary Judgment. Dkt. 482. The Court is familiar with the record herein and has reviewed the motion and documents filed in support of and in opposition thereto, and it is fully advised. Oral argument is unnecessary to decide this motion.

For the reasons set forth below, Pneumo Abex's Motion for Summary Judgment should be granted, in part, and denied, in part.

ORDER ON DEFENDANT PNEUMO ABEX, LLC'S MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

This is an asbestos case. Dkt. 168. The above-entitled action was commenced in Pierce County Superior Court on October 27, 2017. Dkt. 1-1, at 6. Notice of removal from the state court was filed with this Court on July 3, 2018. Dkt. 1-1.

In the operative complaint, Plaintiff alleges that Rudie Klopman-Baerselman ("Decedent") was exposed to asbestos-containing products sold or supplied by various defendants, including Pneumo Abex, causing Decedent injuries for which Pneumo Abex is liable. Dkt. 168. Decedent was diagnosed with mesothelioma on approximately July 11, 2017, and died on November 25, 2017, before being deposed. Dkts. 168, at 4; and 374, at 7.

The complaint provides that Decedent performed all maintenance work on his vehicles, including friction work, from approximately 1966 to 1997. Dkt. 168. Plaintiff alleges that Decedent was exposed to asbestos attributable to Pneumo Abex while performing vehicle maintenance. Dkt. 168. "Plaintiffs sue Pneumo-Abex, LLC (as successor to Abex) as a supplier of asbestos-containing friction linings to Genuine Parts Company/NAPA for use in Rayloc brakes, as well as a supplier of asbestos-containing friction linings used in Borg-Warner manual clutches and in AC Delco brakes." Dkt. 548, at 2.

There are two other general theories of asbestos exposure in this case. First, Plaintiff claims that Decedent was also exposed to asbestos while working as a Dutch Merchant Marine from approximately 1955 to 1959. Dkt. 168, at 6. Second, Plaintiff had previously claimed, but removed from the operative complaint (Dkt. 168), that Decedent was exposed to asbestos while working at Tektronix. Dkt. 1-1, at 9–10.

"Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability." Dkt. 168, at 6.

**A. MOTION FOR SUMMARY JUDGMENT**

Pneumo Abex filed the instant Motion for Summary Judgment. Dkt. 482. Pneumo Abex argues that there is no credible evidence that Decedent worked with or around asbestos-containing automotive brake or friction materials produced by Pneumo Abex such that they exposed Decedent to respirable asbestos fibers or that they were a substantial contributing factor to the cause of Decedent's disease. Dkt. 482. The instant Motion for Summary Judgment seeks dismissal of all of Plaintiff's claims against Pneumo Abex. Dkt. 482.

**B. PLAINTIFF'S RESPONSE**

Plaintiff filed a response in opposition to Pneumo Abex's Motion for Summary Judgment. Dkt. 548. Plaintiff does not oppose the Motion for Summary Judgment as to the claims for conspiracy, premises liability, or abnormally dangerous activities. Dkt. 548. Plaintiff argues that his evidence demonstrates that there are genuine issues of material fact as to whether Decedent was substantially exposed to asbestos from Abex Pneumo friction linings causing Decedent's mesothelioma. Dkt. 548. Plaintiff also filed a Declaration of Benjamin H. Adams in Support of Plaintiff's Response in Opposition to the Motion of Defendant Pneumo Abex, LLC for Summary Judgment. Dkt. 554. The declaration is voluminous, 1311 pages, containing numerous deposition transcripts, photographs, asbestos-related literature and expert reports, and other materials. Dkts. 554; 554-1, and 554-2.

Plaintiff offers testimony from several witnesses that Decedent purchased Rayloc brakes in the 1980s and 1990s, and possibly earlier. Dkts. 548, at 4–5; and 554-1. Plaintiff provides

testimony describing Decedent's extensive brake and friction work from approximately the 1970s to 2001. Dkts. 548; and 554-1. Plaintiff produced photographs of a box labeled NAPA/Rayloc brake shoes, which contained a receipt dated March 23, 1993. Dkt. 548, at 5–6; Dkt. 554-1. The NAPA/Rayloc box states: "Caution: Contains asbestos fiber. Avoid creating dust, breathing asbestos. Dust may cause serious bodily harm." Dkt. 554-1, at 267. Plaintiff writes that "the receipt reflects a 'core deposit' of part number EB-280. Eric [Klopman, Decedent's son ("Eric"),] testified this reflects that his father brought used cores back to the store for a refund of the deposit, and exchanged them for new replacement parts, and therefore that his father exchanged used Rayloc brakes for new Rayloc replacements." Dkt. 548, at 6. Eric further testified that Decedent did clutch jobs and that he had witnessed Decedent install and remove Borg-Warner clutch facings as recently as 2014. Dkts. 548; and 554-1. Ray Smith, a friend and co-worker of Decedent's, further described Plaintiff's extensive work with Rayloc, Bendix, and AC Delco brakes. Dkts. 548; and 554-1.

The Declaration of Michael Heyer states that his family owned an automotive repair shop, Independent Auto, in Washougal, Washington. Dkts. 548; and 554-1, at 387. Michael Heyer wrote that he knew that Decedent performed work there and "definitely performed brake, clutch, and gasket work at Independent Auto," that it was "dusty work," and that Independent Auto used Rayloc brakes and clutches. Dkts. 548; and 554-1, at 387.

Plaintiff submits deposition evidence purporting to show that Pneumo Abex was an exclusive or primary supplier of asbestos-containing friction materials to Rayloc. Dkts. 548, at 9–10; 554-1; and 554-2.

C. PNEUMO ABEX'S REPLY

Pneumo Abex filed a reply in support of the instant Motion for Summary Judgment. Dkt. 572. Pneumo Abex argues and submits evidence purporting to show that its brake linings were not used for new NAPA-brand brakes sold by NAPA. Dkt. 572; and 573. NAPA further contends that deposition testimony shows that Pneumo Abex was just one of many suppliers of brake linings incorporated into remanufactured NAPA-brand brakes. Dkt. 572; and 573. Pneumo Abex argues Plaintiff cannot demonstrate Decedent's exposure to asbestos from a product attributable to Pneumo Abex. Dkt. 572. Pneumo Abex argues that Plaintiff has not produced evidence required to establish causation or to prove that exposure to any product attributable to Pneumo Abex was a substantial factor in causing Decedent's injury. Dkt. 572.

## II. DISCUSSION

A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**B. WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

**C. SUMMARY JUDGMENT ANALYSIS**

1. <u>Washington Product Liability Standard</u>

"Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular

manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 245–47 (1987) (quoting *Martin v. Abbott Laboratories,* 102 Wn.2d 581, 590 (1984)).

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product. [] Hence, instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.

*Lockwood,* 109 Wn.2d at 246–47 (citations omitted).

*Lockwood* prescribes several factors for courts to consider when "determining if there is sufficient evidence for a jury to find that causation has been established":

1. Plaintiff's proximity to an asbestos product when the exposure occurred;

2. The expanse of the work site where asbestos fibers were released;

3. The extent of time plaintiff was exposed to the product;

4. The types of asbestos products to which plaintiff was exposed;

5. The ways in which such products were handled and used;

6. The tendency of such products to release asbestos fibers into the air depending on their form and the methods in which they were handled; and

7. Other potential sources of the plaintiff's injury; courts must consider the evidence presented as to medical causation.

*Id.* at 248–49.

2. <u>Washington Product Liability Analysis</u>

Plaintiff's evidence demonstrates that there are genuine issues of material fact with respect to Plaintiff's product liability claim. Plaintiff has offered witness testimony tending to show that, since approximately the 1960s, Decedent performed extensive work using products attributable to Pneumo Abex, including Rayloc brakes. *See* Dkts. 548, at 2–8; 554-1; and 554-2. Plaintiff's evidence tends to show that Pneumo Abex was the primary supplier of brake linings used by Rayloc from the 1960s until as late as 1995. *See, e.g.,* Dkts. 554-2, at 400, 558, 588. Plaintiff has offered a photograph of a box from Decedent's garage of Rayloc/NAPA brake shoes bearing an asbestos warning and containing a NAPA receipt dated March 12, 1993. Dkt. 554-1, at 267–69. Plaintiff's evidence tends to show that Decedent worked with and was exposed to asbestos-containing products and brake replacement parts attributable to Pneumo Abex. *See* Dkts. 548, at 2–10; 554-1; and 554-2.

The Court has considered each of the *Lockwood* factors described above and concludes that Plaintiff has sufficient evidence for a jury to find that causation has been established. First, Plaintiff offers lots of evidence that Decedent worked closely with allegedly asbestos-containing products attributable to Pneumo Abex, including Rayloc brakes. *See, e.g.,* Dkt. 554-1, at 72 (providing Steven Klopman-Baerselman's ("Steven") testimony that Decedent performed "hands-on work" roughing up Rayloc brake pads and blowing them clean); Dkt. 554-1, at 388–390 (declaring that Decedent performed automotive repair work at Independent Auto, where they used Rayloc brakes).

Second, Plaintiff's limited evidence describing Decedent's worksite weighs in favor of a finding of causation. *See, e.g.,* Dkt. 554-1, at 260 (providing Eric's testimony that Decedent's face was approximately 20–24 inches from brake surfaces that he roughed up and that Decedent

roughed up Rayloc brakes approximately 50–100 times before 2001); Dkt. 554-1, at 388–390 (stating that Decedent performed dusty, indoor work, with very little ventilation, scraping and grinding gaskets at Independent Auto indoors and with little ventilation).

Third, Plaintiff's offers evidence demonstrating that Plaintiff was exposed to Pneumo Abex asbestos-containing products for decades over the course of numerous brake jobs and automotive friction work. *See* Dkts. 548, at 2–8; 554-1; and 554-2.

Fourth, Plaintiff's evidence suggests that Decedent was exposed to asbestos-containing automotive friction parts attributable to Pneumo Abex in the form of Rayloc brakes and replacement parts. *See, e.g.,* Dkts. 548, at 2–8; 554-1, and 554-2. Here, the parties' evidence is in conflict. Plaintiff argues and provides evidence purporting to show that Pneumo Abex was a primary or exclusive supplier of asbestos-containing friction materials to Rayloc. Dkt. 548, at 9–10.[1] Pneumo Abex argues and offers evidence purporting to show that Abex was one of many suppliers of those friction materials. Dkt. 572, at 5. To the extent these factual issues are in controversy, the Court must resolve them in favor of Plaintiff for purposes of this motion. *See T.W. Elect. Service Inc.*, 809 F.2d at 630.

Plaintiff alleges that Decedent worked with other asbestos-containing friction materials attributable to Pneumo Abex, including Borg Warner clutch parts and AC Delco brakes. But Plaintiff has not shown that these other parts contained asbestos attributable to Pneumo Abex. *See* Dkt. 548; *see also* Dkt. 572, at 8.

---

[1] In support of its claim that Pneumo Abex was the exclusive supplier of asbestos-containing friction materials, Plaintiff relies, in part, on the testimony of Charles Allen ("Mr. Allen"), a Rayloc corporate representative. Dkts. 548, at 9–10; and 554-2, at 574. Pneumo Abex wrote in its reply brief that Mr. Allen's testimony is inadmissible hearsay, but Pneumo Abex makes no motion to exclude Mr. Allen's testimony. Dkt. 572, at 7. At this time, the Court need not determine whether Mr. Allen's testimony is admissible.

Fifth, Plaintiff's evidence describes how Decedent performed brake jobs, clutch jobs, and other automotive friction work. *See* Dkts. 548, at 2–8; 554-1; and 554-2. Plaintiff's evidence tends to show that Plaintiff performed dusty, hands-on automotive repair work with asbestos-containing parts attributable to Pneumo Abex. *See* Dkts. 548; 554-1; and 554-2.

Sixth, Plaintiff's evidence describes Decedent's automotive repair work as dusty and tending to release asbestos fibers. *See, e..g,* Dkts. 548, at 2–8; and 554-1, at 389 ("Brake, clutch, and gasket work is dusty work. When removing brakes, we would blow out the drums with compressed brake cleaner from a can. This would put dust in the air"). Plaintiff also provides various articles and studies in support of his assertion that high concentrations of asbestos fibers were released during the kind of friction work Decedent performed. *See* Dkts. 548, at 13–15; and 554-2.

Finally, it appears that there may be many possible sources that could have caused Decedent's injuries and death. Decedent's merchant marine career, his work at Tektronix, and his automotive repair practice may have exposed him to asbestos from numerous asbestos-containing products produced by various manufacturers. Plaintiff provides three expert opinions in support of his claim that Decedent's substantial exposure to asbestos from Pneumo Abex products caused his mesothelioma: Susan Raterman ("Ms. Raterman"); Carl Brodkin ("Dr. Brodkin"); and Ronald Gordon ("Dr. Gordon"). Dkt. 548, at 10–12.[2]

Ms. Raterman, an Industrial Hygienist, opines that:

> [W]ork performed by [Decedent] with brakes between the 1960s and the 1990s, including those manufactured by Bendix, NAPA, Pneumo Abex, Rayloc, Shucks [*sic*], Toyota, and other would have exposed him to significant concentrations of asbestos dust thousands to hundreds of thousands of times above background

---

[2] There is a growing body of pending motions, not yet ripe for consideration, to exclude these experts' testimony. *E.g.,* Dkts. 511; 549; and 590.

ORDER ON DEFENDANT PNEUMO ABEX, LLC'S MOTION FOR SUMMARY JUDGMENT - 10

        levels which would have contributed to his cumulative asbestos exposure dose and increased his risk of developing mesothelioma.

Dkt. 548, at 11.

        Dr. Brodkin opines that Decedent's mesothelioma was causally related to asbestos exposure from his work as an automotive mechanic. Dkt. 554-2, at 134. Dr. Gordon opines that Decedent had mixed asbestos exposure to chrysotile, crocidolite, amosite, tremolite/actinolite, and anthophyllite, which were causative factors in the development of Decedent's mesothelioma. Dkt. 554-2, at 253.

        In consideration of the *Lockwood* factors above, Plaintiff has offered sufficient evidence for a jury to find that causation has been established. Factors one through six weigh in favor of a finding of causation. Factor seven is mixed. Although Plaintiff's mesothelioma could have been caused by many different sources of asbestos exposure, products attributable to Pneumo Abex are among those sources.

        There remain genuine issues of material fact with respect to Plaintiff's Washington product liability claim against Pneumo Abex. Viewing the evidence in a light most favorable to Plaintiff, a jury could find that Plaintiff has established a reasonable connection between Decedent's mesothelioma and asbestos-containing products attributable to Pneumo Abex. Therefore, the Court should deny Pneumo Abex's Motion for Summary Judgment as to its request to dismiss Plaintiff's Washington product liability claim.

    3. <u>Other Possible Claims</u>

        The operative complaint's causes of action are vague. *See* Dkt. 168, at 6 ("Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability.").

In the instant Motion for Summary Judgment, Pneumo Abex seeks dismissal of all of Plaintiff's claims. In its response brief to the instant motion, Plaintiff provides that it "does not oppose the motion as to the claims for conspiracy, premises liability, or abnormally dangerous activities [Sections 402A and 402B of the Restatement of Torts]." Dkt. 548, at 1. Additionally, Plaintiff limits its discussion of claims to only Washington product liability. *See* Dkt. 548, at 16–20.

Except for its Washington product liability claim, Plaintiff has not sufficiently discussed or presented evidence to establish genuine issues of material fact with respect to Plaintiff's other broad claims of negligence, conspiracy, strict liability under Section 402A and 402B of the Restatements of Torts, premises liability, and any other applicable theory of liability. Therefore, the Court should grant Pneumo Abex's Motion for Summary Judgment as to its request to dismiss Plaintiff's other broad claims.

The Court need not consider the additional issue set forth in the instant motion of whether Plaintiff's claims against Pneumo Abex should be dismissed because there is no evidence demonstrating that any respirable asbestos from an Abex product was a substantial contributing factor to the cause of the Decedent's disease. The substantial factor standard (a higher standard) is applied in general negligence and strict liability cases under federal maritime law. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016). The parties have not discussed the applicability of federal maritime law to Plaintiff's claims against Pneumo Abex. *See* Dkts. 482; 548; and 572.

4. Conclusion

Therefore, the Court should grant, in part, and deny, in part, Pneumo Abex's Motion for Summary Judgment (Dkt. 482). The motion should be denied as to its request to dismiss

1 | Plaintiff's Washington product liability claim. The motion should be granted as to its request to
2 | dismiss Plaintiff's other broad claims of negligence, conspiracy, strict liability under Section
3 | 402A and 402B of the Restatements of Torts, premises liability, and any other applicable theory
4 | of liability.

### III. ORDER

Therefore, it is hereby ORDERED that:

- Defendant Pneumo Abex, LLC's Motion for Summary Judgment (Dkt. 482) is **GRANTED, in part, and DENIED, in part,** as follows:
    - The motion is **DENIED** as to its request to dismiss Plaintiff's Washington product liability claim; and
    - The motion is **GRANTED** as to its request to dismiss Plaintiff's other broad claims of negligence, conspiracy, strict liability under Section 402A and 402B of the Restatements of Torts, premises liability, and any other applicable theory of liability.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of December, 2019.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge