UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERIC KLOPMAN-BAERSELMAN, as Personal Representative for the Estate of RUDIE KLOPMAN-BAERSELMAN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. 3:18-cv-05536-RJB<br><br>ORDER ON DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Honeywell International Inc.'s ("Honeywell") Motion for Summary Judgment. Dkt. 484. The Court is familiar with the record herein and has reviewed the motion and documents filed in support of and in opposition thereto, and it is fully advised. Oral argument is unnecessary to decide this motion.

For the reasons set forth below, Honeywell's Motion for Summary Judgment should be granted, in part, and denied, in part.

ORDER ON DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

This is an asbestos case. Dkt. 168. The above-entitled action was commenced in Pierce County Superior Court on October 27, 2017. Dkt. 1-1, at 6. Notice of removal from the state court was filed with this Court on July 3, 2018. Dkt. 1-1.

In the operative complaint, Plaintiff alleges that Rudie Klopman-Baerselman ("Decedent") was exposed to asbestos-containing products sold or supplied by various defendants, including Honeywell, causing Decedent injuries for which they are liable. Dkt. 168. Decedent was diagnosed with mesothelioma on approximately July 11, 2017, and died on November 25, 2017, before being deposed. Dkts. 168, at 4; and 374, at 7.

The complaint provides that Decedent performed all maintenance work on his vehicles, including friction work, from approximately 1966 to 1997.[1] Dkt. 168. Plaintiff alleges that Decedent was exposed to asbestos attributable to Honeywell while performing vehicle maintenance. Dkts. 168; and 557. Plaintiff sues Honeywell as successor-in-interest to Bendix Corporation, which Plaintiff alleges sold asbestos-containing brakes from 1939 until 2001. Dkts. 168; and 557.

There are two other general theories of asbestos exposure in this case. First, Plaintiff claims that Decedent was exposed to asbestos while working as a Dutch Merchant Marine from approximately 1955 to 1959. Dkt. 168, at 6. Second, Plaintiff had previously claimed, but removed from the operative complaint (Dkt. 168), that Decedent was exposed to asbestos while working at Tektronix. Dkt. 1-1, at 9–10.

---

[1] Plaintiff has filed a motion for leave to amend the complaint, not yet ripe for consideration, to change the alleged timeframe of Decedent's performed vehicle maintenance to 1959 to 1997. Dkts. 620; and 621-1, at 7.

ORDER ON DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT - 2

"Plaintiff claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence; conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts; premises liability; and any other applicable theory of liability." Dkt. 168, at 6.

**A. MOTION FOR SUMMARY JUDGMENT**

Honeywell filed the instant Motion for Summary Judgment. Dkt. 484. Honeywell makes two primary arguments: First, that Plaintiff conclusively admitted that he has no claim against Honeywell by untimely responding to a request for admissions propounded by Defendant Genuine Parts Company; second, that Decedent's mesothelioma was caused by career exposures to amphibole asbestos as a merchant mariner and as a worker at Tektronix. Dkt. 484. Honeywell explains that chrysotile fibers, allegedly the only type of asbestos fibers used in brake manufacturing, were not found in Decedent's lung tissue fiber burden test. Dkts. 484; 570. Honeywell further argues that Plaintiff's claim for punitive damages is not permitted under Washington law. Dkt. 484, at 17. The instant Motion for Summary Judgment seeks dismissal of all of Plaintiff's claims against Honeywell. Dkt. 484.

**B. PLAINTIFF'S RESPONSE**

Plaintiff filed a response in opposition to Honeywell's Motion for Summary Judgment. Dkt. 557. Plaintiff does not oppose the motion as to its request to dismiss his claims for conspiracy and premises liability. Dkt. 557. Plaintiff argues that there are genuine issues of material fact as to whether Decedent was substantially exposed to asbestos from Honeywell products causing Decedent's mesothelioma. Dkt. 557.

Plaintiff offers evidence, including testimony from several witnesses, that Decedent performed hundreds of brake jobs, from approximately the 1960s to 1990s, and that he used and preferred Bendix brakes. Dkt. 557, at 2–5. Plaintiff offers evidence that Bendix sold asbestos-

containing brakes from 1939 until 2001, that all Bendix brakes available in the 1970s contained asbestos, and that all Bendix drum brakes for cars contained asbestos until 1983. Dkt. 557, at 5–6.

Plaintiff relies, in part, on three expert opinions in support of his claim that Decedent's substantial exposure to asbestos from products attributable to Honeywell caused his mesothelioma: Susan Raterman ("Ms. Raterman"); Carl Brodkin ("Dr. Brodkin"); and Ronald Gordon ("Dr. Gordon"). Dkt. 557, at 10–12, 14–15.[2]

Ms. Raterman, an Industrial Hygienist, opines that:

> [W]ork performed by [Decedent] with brakes between the 1960s and the 1990s, including those manufactured by Bendix, NAPA, Pneumo Abex, Rayloc, Shucks [*sic*], Toyota, and other would have exposed him to significant concentrations of asbestos dust thousands to hundreds of thousands of times above background levels which would have contributed to his cumulative asbestos exposure dose and increased his risk of developing mesothelioma.

Dkt. 558-3, at 110.

Dr. Brodkin opines that Decedent's mesothelioma was causally related to asbestos exposure from his work as an automotive mechanic. Dkt. 558-2. Dr. Gordon opines that Decedent had mixed asbestos exposure to chrysotile, crocidolite, amosite, tremolite/actinolite, and anthophyllite, which were causative factors in the development of Decedent's mesothelioma. Dkt. 558-3. Dr. Gordon further opines, with respect to the absence of chrysotile asbestos in Decedent's lung tissue fiber burden test, that:

> Based on the presence of anthophyllite and tremolite/actinolite, [Decedent] more than likely had exposure to chrysotile asbestos.
> …. It is unlikely that chrysotile will still be present many years after exposure based on digestion and removal from the site, lung or lymph node, but it is a correlated exposure identified by the

---

[2] There is a growing body of pending motions, not yet ripe for consideration, to exclude these experts' testimony. *E.g.,* Dkts. 511; 549; and 590.

presence of the anthophyllite and/or tremolite/actinolite which was found.

Dkt. 558-3, at 4–5.

### C. HONEYWELL'S REPLY

Honeywell filed a reply in support of the instant Motion for Summary Judgment. Dkt. 570. Honeywell's reply makes four primary arguments. First, Honeywell argues that Plaintiff's expert opinions regarding chrysotile asbestos should be excluded because they lack a reliable scientific methodology. Second, Honeywell argues that by failing to discuss punitive damages in its response, Plaintiff concedes that his claim for punitive damages should be dismissed. Third, Plaintiff argues that Plaintiff failed to address all of his "catch-all" claims for liability, and they should, therefore, be dismissed. Fourth, Honeywell argues that peer reviewed epidemiologic studies exonerate work as a vehicle mechanic from the development of mesothelioma. Dkt. 570.

## II. DISCUSSION

### A. INADEQUATELY BRIEFED ISSUES

1. Whether Plaintiff "Judicially Admitted" That He Has No Claim Against Honeywell

Honeywell argues that Plaintiff, by allegedly untimely responding to Defendant Genuine Parts Company's ("GPC") Request for Admission, conclusively admitted that he has no claim against Honeywell under Rule 36. Dkt. 484, at 5. "The Court need not consider arguments that are inadequately briefed, as is the case here." *Rivera v. E. Bay Mun. Util. Dist.*, C 15-00380 SBA, 2017 WL 3593113, at *17 (N.D. Cal. Aug. 21, 2017) (citing *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Honeywell contends that Plaintiff's reply to a GPC request for admissions was due on September 30, 2019, and that Plaintiff failed to timely respond to the request for admissions. Dkt. 484, at 7. But Honeywell makes no showing as to when Plaintiff replied or whether Plaintiff

never replied; in its declaration, Honeywell merely provides a copy of the requests for admission propounded on August 27, 2019. *See* Dkts. 484, at 7; and 485. Plaintiff did not address this issue in his response brief. *See* Dkt. 557.

The Court should not decide this issue with such incomplete briefing from both Honeywell and Plaintiff.

**2.** <u>Whether Plaintiff's Claim for Punitive Damages is not Permitted</u>

The Court need not consider the issue raised by Honeywell as to whether Plaintiff's Request for Punitive Damages should be denied. This issue has been inadequately briefed by the parties.

Honeywell's argument is as follows: "'Washington expressly prohibits punitive damages as a violation of public policy unless explicitly authorized by statute.'" Dkt. 484, at 17 (quoting *Jongeward v. NSRF R. Co.,* 174 Wn. 2d 586, 592 (2012)). Plaintiff did not address this issue in this response brief. *See* Dkt. 557. In its reply, Honeywell adds that, by failing to address the issue, "Plaintiff concedes that his claim for punitive damages should be dismissed." Dkt. 570, at 9. But neither Honeywell nor Plaintiff show that punitive damages are or are not authorized by statute.

The Court should not decide this issue with such incomplete briefing.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

C. **WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## D. SUMMARY JUDGMENT ANALYSIS

1. <u>Washington Product Liability Standard</u>

"Generally, under traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 245–47 (1987) (quoting *Martin v. Abbott Laboratories,* 102 Wn.2d 581, 590 (1984)).

> Because of the long latency period of asbestosis, the plaintiff's ability to recall specific brands by the time he brings an action will be seriously impaired. A plaintiff who did not work directly with the asbestos products would have further difficulties in personally identifying the manufacturers of such products. The problems of identification are even greater when the plaintiff has been exposed at more than one job site and to more than one manufacturer's product. [] Hence, instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at his workplace.

*Lockwood,* 109 Wn.2d at 246–47 (citations omitted).

*Lockwood* prescribes several factors for courts to consider when "determining if there is sufficient evidence for a jury to find that causation has been established":

1. Plaintiff's proximity to an asbestos product when the exposure occurred;
2. The expanse of the work site where asbestos fibers were released;
3. The extent of time plaintiff was exposed to the product;
4. The types of asbestos products to which plaintiff was exposed;
5. The ways in which such products were handled and used;
6. The tendency of such products to release asbestos fibers into the air depending on their form and the methods in which they were handled; and

ORDER ON DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT - 8

1    7. Other potential sources of the plaintiff's injury; courts must consider the evidence
        presented as to medical causation.

*Id.* at 248–49.

    2. <u>Washington Product Liability Analysis</u>

Plaintiff's evidence demonstrates that there are genuine issues of material fact with respect to Plaintiff's product liability claim. Plaintiff has offered evidence tending to show that, from approximately the 1960s to the 1990s, Decedent performed extensive brake work using asbestos-containing Bendix brakes attributable to Honeywell. *See* Dkts. 557; and 558.

The Court has considered each of the *Lockwood* factors described above, and concludes that Plaintiff has provided sufficient evidence for a jury to find that causation has been established. First, Plaintiff offers lots of evidence that Decedent worked closely with allegedly asbestos-containing products attributable to Honeywell, including Bendix brakes. *See* Dkts. 557; and 558.

Second, Plaintiff's limited evidence describing Decedent's work conditions is sufficient to justify a jury finding of causation. *See, e.g.,* Dkt. 558-1, at 216, 251, and 367–68 (providing Steven Klopman-Baerselman's testimony that Decedent would clean out brakes with compressed air with his face one to two feet away from the brakes, that he cannot recall his father wearing a dust mask or respirator, and that his father swept up debris into a dustpan after a job was done); Dkt. 558-1, at 895–97 (stating that Decedent performed dusty, indoor work, with very little ventilation, scraping and grinding gaskets at Independent Auto).

Third, Plaintiff's offers evidence demonstrating that Plaintiff was exposed to asbestos-containing Bendix brakes for decades over the course of numerous brake jobs and automotive work. *See* Dkts. 557; and 558.

Fourth, Plaintiff's evidence suggests that Decedent was exposed to asbestos by Bendix brakes. *See* Dkts. 557; and 558.

Fifth, Plaintiff's evidence describes how Decedent performed brake jobs. *See* Dkts. 557; and 558. Plaintiff's evidence tends to show that Plaintiff performed dusty brake jobs and automotive work with asbestos-containing Bendix brakes. *See* Dkts. 557; and 558.

Sixth, Plaintiff's evidence describes Decedent's automotive repair work with Bendix brakes as dusty and tending to release asbestos fibers. *See, e.g.,* Dkt. 556-1, at 896 ("Brake, clutch, and gasket work is dusty work. When removing brakes, we would blow out the drums with compressed brake cleaner from a can. This would put dust in the air"). Plaintiff also provides various articles and studies in support of his assertion that the automotive work performed by Decedent releases dangerous asbestos dust that can cause mesothelioma. *See* Dkts. 557; and 558. Honeywell provides studies that allegedly "exonerate work as a vehicle mechanic from the development of mesothelioma." Dkts. 570, at 5; and 485-6. To the extent these factual issues are in controversy, the Court must resolve them in favor of Plaintiff for purposes of this motion. *See T.W. Elect. Service Inc.*, 809 F.2d at 630.

Finally, it appears that there may be many possible sources that could have caused Decedent's injuries and death. Decedent's merchant marine career, his work at Tektronix, and his automotive repair practice may have exposed him to asbestos from numerous asbestos-containing products produced by various manufacturers. The expert opinions relied upon by Plaintiff support a jury determination that Decedent's mixed asbestos exposure, including his work with Bendix brakes, was a causative factor in his developing mesothelioma. *See* Dkts. 557, at 10–12, 14–15; 558-2; and 558-3.

1    In consideration of the *Lockwood* factors above, Plaintiff has offered sufficient evidence

2    for a jury to find that causation has been established. Factors one through six weigh in favor of a

3    finding of causation. Factor seven is mixed. Although Plaintiff's mesothelioma could have been

4    caused by many different sources of asbestos exposure, Bendix brakes attributable to Honeywell

5    are among those sources.

6    There remain genuine issues of material fact with respect to Plaintiff's Washington

7    product liability claim against Honeywell. Viewing the evidence in a light most favorable to

8    Plaintiff, a jury could find that Plaintiff has established a reasonable connection between

9    Decedent's mesothelioma and asbestos-containing products attributable to Honeywell.

10   Therefore, the Court should deny Honeywell's Motion for Summary Judgment as to its request

11   to dismiss Plaintiff's Washington product liability claim.

12       3.   Other Possible Claims

13   The operative complaint's causes of action are vague. *See* Dkt. 168, at 6 ("Plaintiff

14   claims liability based upon the theories of product liability (RCW 7.72 et seq.); negligence;

15   conspiracy; strict product liability under Section 402A and 402B of the Restatement of Torts;

16   premises liability; and any other applicable theory of liability.").

17   In the instant Motion for Summary Judgment, Honeywell seeks dismissal of all of

18   Plaintiff's claims. Dkt. 484. In its response to the instant motion, Plaintiff provides that he "does

19   not oppose Honeywell's motion with regard to his conspiracy and premises liability claims."

20   Dkt. 557, at 2. Additionally, Plaintiff limits his discussion of claims to only Washington product

21   liability. *See* Dkt. 557.

22   Plaintiff has not sufficiently discussed or presented evidence to establish genuine issues

23   of material fact with respect to his other broad claims of negligence, conspiracy, strict liability

24

ORDER ON DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT - 11

under Section 402A and 402B of the Restatements of Torts, premises liability, and any other applicable theory of liability. Therefore, the Court should grant Honeywell's Motion for Summary Judgment as to its request to dismiss Plaintiff's other broad claims.

4. Conclusion

Therefore, the Court should grant, in part, and deny, in part, Honeywell's Motion for Summary Judgment (Dkt. 484). The motion should be denied as to its request to dismiss Plaintiff's Washington product liability claim. The motion should be granted as to its request to dismiss Plaintiff's other broad claims. Additionally, the motion should be denied without prejudice as to the inadequately briefed issues discussed above.

### III. ORDER

Therefore, it is hereby ORDERED that:

- Defendant Honeywell International Inc.'s Motion for Summary Judgment (Dkt. 484) is **GRANTED, in part, and DENIED, in part,** as follows:
    - The motion is **DENIED** as to its request to dismiss Plaintiff's Washington product liability claim;
    - The motion is **GRANTED** as to its request to dismiss Plaintiff's other broad claims of negligence, conspiracy, strict liability under Section 402A and 402B of the Restatements of Torts, premises liability, and any other applicable theory of liability; and
    - The motion is **DENIED WITHOUT PREJUDICE** as to its inadequately briefed requests that the Court find that (1) Plaintiff judicially admitted that he has no claim against Honeywell, and (2) Plaintiff's Request for Punitive Damages Should be Denied.

1  The Clerk is directed to send uncertified copies of this Order to all counsel of record and
2  to any party appearing pro se at said party's last known address.
3  Dated this 12th day of December, 2019.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge